DONALD L. FAULKNER v. CLARENCE S. WATERMAN.

[No. 371A42. Filed October 31, 1972. Rehearing denied December 5, 1972. Transfer denied May 14, 1973.]

Howard S. Young, Jr., Richard Andrew Young, Young & Young, of Indianapolis, Webb, Webb, Smith, Pearce & Bar, of Noblesville, for appellant.

John A. Young, Thomas P. Ledgerwood, Rocap, Rocap, Reese & Young, of Indianapolis, for appellee.

WHITE, J.—This is an appeal from a judgment on a negative verdict against plaintiff-appellant, Donald Faulkner, on his complaint against defendant-appellee, Clarence Waterman, alleging the wrongful death of Faulkner's two year old son. The boy was killed when he was struck by an auto driven by appellee. Appellant is claiming two points of error below. First, appellant contends the trial court committed reversible error by allowing evidence of defendant-appellee's lack of prior arrests and/or convictions to remain in the record. Secondly, appellant contends the giving of defendant-appellee's tendered instruction No. 1 was reversible error.

Appellant's first contention of error is based on the following question asked by defendant's counsel on redirect examination of defendant:

"Q. Have you ever been arrested and convicted of anything?
"A. No, sir, I have not.
"Plaintiff's Counsel: 'Just a moment. That's absolutely immaterial, Judge, and he knows it.'
"The Court: 'He may answer the question and it is answered.'
"Let the Record Show:
'The Plaintiff Moves to Strike Out the Answer for the reason that it is immaterial and Object to the Question; it just doesn't determine this case one bit.'
"The Court: 'The witness may answer for purposes of credibility only and the answer will be reinstated.' "

Plaintiff-appellant cites *Peoples Trust & Savings Company* v. *Cohen* (1947), 117 Ind. App. 472, 480, 73 N. E. 2d 366, 370. In

that case the Indiana Appellate Court reversed the trial court for "admitting into evidence, and in overruling appellant's motion to strike out the testimony of the two character witnesses for appellee who testified, in rebuttal, as to appellee's good general reputation for truth and veracity, and for honesty and fair dealing" where the appellee's character had not been brought into issue. The court there noted that the "testimony [of the two character witnesses] was liable to have had a great weight with the jury and to have caused them to give a greater weight to appellee's testimony than other witnesses, and to have improperly influenced their verdict." Here, however, the improper testimony was by the appellee himself concerning, not an affirmative fact such as good reputation, but mere negative, the lack of a criminal record. Absent evidence that a witness has been "arrested and convicted of anything" neither logic, common sense, nor the law would permit a juror to assume that he had been convicted of something. While we do not approve of the court's ruling nor of her comment (apparently in the presence of the jury, but without objection or execption from appellant) implying that the evidence might have a bearing on the witness' credibility, it does not appear to us that these errors affected the fairness of the trial and determination of the merits. Appellate Rule 15(D) therefore prohibits a reversal on that ground.

Appellant also claims error in the giving, over his objection, of a "sudden emergency" instruction, defendant's tendered instruction No. 1, which reads:

"You are instructed that where a person is confronted with a sudden emergency not of his own making without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had had time for deliberation. Accordingly, if he exercises such care as an ordinary prudent person would exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, even though another course of conduct would have been more judicious or safer or might even have avoided the accident.

"So in this case, if you find that Clarence S. Waterman was faced or confronted with a sudden emergency not of his own making and that he then pursued the course that an ordinary prudent person would pursue or follow when confronted by the same emergency, but the collision and accident to Stephen Faulkner nevertheless resulted, then Clarence S. Waterman would not be liable, even though you believe that another course of action or conduct than that which he pursued when confronted with the said sudden emergency, would have been more judicious, or safe, or might even have avoided the collision and accident."

Plaintiff-appellant's objection was:

". . . that it is an incorrect statement of the law of sudden emergency and is not applicable to the facts in this case. It is incorrect for the reason that the sudden emergency cannot be the result of a violation of a statute and cannot be the result of failure to keep a proper lookout or the failure to exercise ordinary care. The language 'emergency not of his own making' is insufficient to incorporate the legal definition just given. For these reasons it is a misstatement of the law and the Plaintiff objects to the giving of it."

Appellant makes the following recital of facts which he contends render the sudden emergency doctrine inapplicable:

"1. Appellee was 19 years of age and very familiar with the neighborhood and knew that it was residential area where children lived, having driven this route during his senior year in high school on his way to Southport High School.

"2. There were no cars ahead of Appellee, and none approaching him from the opposite direction. It was a bright sunny day. There were no obstructions to Appellee's view as he drove down the highway on either side of the berm and for 30 feet south of the south edge of the highway for as much as 30 feet, except for telephone pole and shrubbery.

"3. Appellee did not see the child until it was too late, but when he did see him he braked hard and cut his wheels to his right. Appellee did strike the child, which injuries were fatal. Appellee did not see the child until he was almost or about to the middle of the highway. The child was running.

"4. The little boy was age two years, ten months. When he ran, he could keep up with his mother's walk.

"5. Persons crossing street intersections have a usual speed of 3½ to 4 miles per hour. This 4 miles per hour is a 'brisk' walk for the average person.

"6. Appellee did not see the child until the time he saw him running on the road, and had no idea where he came from.

"7. No one heard the horn of Appellee's automobile. Several witnesses were so asked."

[The foregoing items appellant characterizes as "uncontradicted evidence," to which he adds the following item as, "contradicted evidence stated in a light most favorable to the Appellee. . . ."]

"As he proceeded in a westerly direction on Edgewood approaching the accident he was traveling between 25 and 30 miles per hour."

Appellant contends that:

"As a matter of law, taking the evidence most favorable to the Appellee, the Appellee was guilty of negligent conduct which was a proximate cause of the emergency. This precludes the application of the doctrine of sudden emergency to Appellee's situation, and makes the instruction inappropriate and error."

While the facts recited by appellant would justify the inference that appellee was negligent and that his negligence created the emergency we cannot say this is the only reasonable inference which can be drawn from those facts. Therefore we cannot agree with the holding in *Conery* v. *Tackmaier* (1967), 34 Wis. 2d 511, 149 N. W. 2d 575, on quite similar facts, that the driver was negligent as a matter of law.

In *Reel* v. *Beckner* (1971), 149 Ind. App. 663, 274 N. E. 2d 548, 549, 27 Ind. Dec. 468, 469, we condemned an instruction "For the reasons stated in *Baltimore, etc.* v. *Reyher, supra* [216 Ind. 545, 550, 24 N. E. 2d 284, 285]" to which we had previously referred as containing a "condemnation of presumptions."

The presumption (or "so-called rule of presumption") there condemned is identical in principle to the rationale of appellant's contention that appellee was negligent as a matter of law. We quote from *Baltimore, etc.*, as follows:

"The first proposition presented by the appellant, and the one most strenuously urged in its brief, is that this court should hold that under the evidence the appellee Reyher's decedent was guilty of contributory negligence as a matter of law. We are called upon to interpret and apply a so-called rule of presumption, which may be stated as follows: That if a person, by the exercise of ordinary care, could have known of the approach of a train, by looking or listening, in time to have avoided the injury, it will be presumed, if he is killed, that he did not look or listen, or, that if he did, he did not heed what he saw or heard. Appellant contends that when this presumption is applied to the undisputed evidence, it must be concluded, as a matter of law, that the decedent was guilty of contributory negligence." (216 Ind. at 549.)

In the course of its discussion of reasons for rejecting that contention the Supreme Court said, *inter alia*:

". . . While some facts may be made presumptive evidence by operation of law, neither courts nor juries have any right to presume any fact in issue which they are called upon to determine. The ultimate facts may, of course, be established by direct or circumstantial evidence, as well as by such inferences as may be legitimately drawn therefrom. [216 Ind. at 551.]

\* \* \*

"Contributory negligence is ordinarily a question of fact for the jury. It is only where the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men that the question becomes one of law for the court. When the facts are of such nature and character as to be reasonably subject to more than one inference, the jury should be permitted to decide whether the party whose conduct is under inquiry was guilty of contributory negligence. We approve and commend the observations of Roby, J., in *Cochran* v. *Town of Shirley* (1909), 43 Ind. App. 453, 456, 457, 87 N. E. 993, where it was said: [Deletions ours.]

'. . . The jury and the trial judge in passing upon the evidence and motion for a new trial are empowered, and it is their peculiar function, to weigh evidence, draw inferences from facts found, and apply to the conclusions at which they arrive the standard of conduct which would have been pursued by a reasonable and prudent person. In this task much is left to discretion and judgment. Different jurors and different judges must be expected to view similar occurrences differently, and so much disparity in the administration of justice as thus comes is no more than the expression of the infirmities necessarily incident to the transaction of human affairs. A court of appeals does not properly assume the attitude which alone becomes the trial judge and the jury. If it did this, the main purpose in the creation of such tribunals would be thwarted. There would be as much diversity between different judges and different courts on appeal as there is between different juries and trial judges. . . . Where the facts are established without conflict, the question of contributory negligence in such cases is one of law, but the power to deny the right of the jury to draw diverse inferences is one which needs to be exercised with caution, otherwise uncertainty of precedent, the avoidance of which is a prime purpose of the law, is brought about. . . . The disposition of appellate courts is to be governed by the verdict in determining whether care commensurate with the known danger was used.' " [216 Ind. at 552, 553.]

As the late Judge Smith said in *Baker* v. *Mason* (1968), 142 Ind. App. 314, 318, 234 N. E. 2d 665, 667, "We are reluctant to impose [as a matter of law] an absolute duty upon today's city drivers to keep looking toward the sidewalk for the purpose of seeing a child or other pedestrian." Whether a driver is exercising ordinary care in the attention he devotes to each source of potential danger and each direction from which it may develop should be for the trier of fact and not for appellate judges or judges presiding at jury trials (except to the extent that the jury-trial-judge may determine the manifest weight of the evidence in passing on a motion to correct error by granting a new trial).

In *McCraney* v. *Kuechenberg* (1969), 144 Ind. App. 629, 636, 248 N. E. 2d 171, 175, in which an identical instruction

was approved, Judge Sullivan said of contentions similar to those advanced here by appellant:

"It is well established that each party is entitled to have the jury instructed upon his particular theory of complaint or defense. *Scott* v. *Sisco* (1959), 129 Ind. App. 364, 156 N. E. 2d 895; *Deming Hotel* v. *Prox* (1968), 142 Ind. App. 603, 236 N. E. 2d 613. Appellant contends that because there is some evidence from which a jury might properly infer negligence on the part of defendant-appellee, and because the Court gave instructions with reference to such alleged negligence, the doctrine of sudden emergency could not be properly applied. Appellant by this ingenious argument attempts to lift himself by his own bootstraps and arrives at the conclusion that *some* evidence of negligence is, by the instructions, miraculously converted into negligence as a matter of law. The mere fact that certain of appellant's tendered instructions were given by the court upon appellant's theories concerning statutory speed requirements and failure to exercise due care to avoid collision, does not and cannot preclude the giving of an instruction representing appellee-denfendant's theory of the case, so long as such theory is supported by the evidence. *Kiger* v. *Arco Auto Carriers, Inc.* (1969), 144 Ind. App. 239, 245 N. E. 2d 677."

And finally we note that when in *Baker* v. *Mason* the Indiana Supreme Court held that the Appellate Court was in error in holding that the trial court had not erred in giving this identical sudden-emergency instruction, but that the trial court's error was harmless,[1] Justice Hunter quoted with approval from *Pareles* v. *McCarthy* (1962), 149 Conn. 238, 178 A. 2d 155, a part of which quotation we here repeat:

" 'There is nothing here which would justify the jury in concluding that the operator was confronted with an emergency. . . . The court, therefore, might well have avoided reference to the doctrine. On the other hand, the jury were specifically instructed to apply the doctrine only if they first ascertained from the evidence that the operator

---

1. The Appellate Court opinion by Judge Smith is cited and quoted *ante* on page 579. The Supreme Court opinion is reported in 253 Ind. 348, 242 N. E. 2d 513, 16 Ind. Dec. 285.

was confronted with an emergency. The error, if any, could not possibly prejudice the jury in their consideration of the case.' " (242 N. E. 2d at 516.)

Since we find no reversible error the judgment is affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported in 288 N. E. 2d 269.