MARY ESTHER BUNDY, ADMINISTRATRIX OF THE ESTATE OF MALCOLM F. BUNDY, DECEASED *v.* AMBULANCE INDIANAPOLIS DISPATCH, INC.

[No. 1-573A83. Filed October 15, 1973. Rehearing denied November 27, 1973. Transfer denied March 1, 1974.]

*Earl C. Townsend, Jr., John F. Townsend, Jr., Townsend, Hovde & Townsend,* of Indianapolis, for appellant.

*Keith C. Reese, John D. Cochran, Jr., Rocap, Rocap, Reese & Young,* of Indianapolis, for appellee.

LOWDERMILK, J.—This action was brought by the plaintiff-appellant as Administratrix of the estate of Malcolm Bundy, deceased, pursuant to wrongful death statute (Burns § 2-404). The complaint alleged that the cause of death was due to the negligence of defendant-appellee, Ambulance Indianapolis Dispatch, Inc. (AID), acting through its agent-driver. AID denied negligence and raised the affirmative defense of contributory negligence on the part of the decedent (Mr. Bundy).

Trial was had and the jury returned a verdict finding for the defendant. Judgment was entered thereon. Appellant timely filed her motion to correct errors and this appeal follows the overruling of said motion.

At the close of the evidence, appellant tendered a "sudden emergency" instruction, which reads as follows, to-wit:

"You are instructed that where a person is confronted with a sudden emergency not of his own making without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent person would exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, even though another course of conduct would have been more judicious or safer or might even have avoided the injury.

So in this case, if you find that Malcolm Bundy was faced or confronted with a sudden emergency not of his own making and that he then pursued a course that an ordinarily prudent person would pursue or follow when confronted by the same emergency, but the collision and accident nevertheless resulted, then Malcolm Bundy was not negligent even though you believe that another course of action or conduct than that which he pursued when confronted with the said sudden emergency, would have been more judicious, or safer, or might even have avoided the collision and death."

No objection was made to this instruction but the trial court refused to give said instruction to the jury. This refusal is assigned as error by appellant

Appellant contends that said instruction is a correct statement of the law, is consistent with the pleadings and is supported by the evidence adduced at trial. We note that the first paragraph of the instruction, which sets out the basic legal premise, was approved almost verbatim in the case of *McCraney* v. *Keuchenberg* (1969), 144 Ind. App. 629, 248 N.E.2d 171. See, also, *Buckner* v. *Wilson* (1967), 141 Ind. App. 272, 227 N.E.2d 462.

Appellee, in its brief, has agreed that the instruction is a correct statement of the law but argues that the evidence does not support the giving of this instruction due to the fact that the decedent was never aware of any emergency situation.

The elements of the doctrine of sudden emergency were set out in the case of *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E.2d 534, 538, as follows:

"The elements which establish the defense of 'sudden emergency' are:

'(1) That the appearance of danger or peril was so imminent that he had no time for deliberation; (citation omitted)

(2) That the situation relied upon to excuse any failure to exercise legal care was not created by his (appellant's) own negligence; (citations omitted)

(3) That his conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances.' (citations omitted)

*Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 247, 132 N.E.2d 919, 924." See, also, *Hedgecock* v. *Orlosky* (1942), 220 Ind. 390, 44 N.E.2d 93; *Paxton* v. *Ferrell* (1969), 144 Ind. App. 124, 244 N.E.2d 439; 21 I.L.E., *Emergency,* § 86, p. 343.

The evidence at trial regarding the collision is as follows. An ambulance belonging to AID delivered a patient to the Community Hospital at Indianapolis, Indiana, using the emergency ambulance area. This area has three exits with doors. After discharging the patient and a fellow employee the driver drove the ambulance out an exit door and parked the ambulance in a set-off several feet down the driveway. The driveway in question is approximately 30 feet wide and is marked for one-way traffic exiting from the ambulance area. Some time later the ambulance driver, desiring to pick up his fellow employee and leave the grounds, got into his ambulance, and proceeded to back the ambulance toward the receiving area. The evidence discloses that the driver looked to his right side before commencing his course of action; he also looked through the open curtains in the rear of the ambulance (side glasses in the ambulance were covered by curtains), and leaned his head out of the left side with the door open as he backed the ambulance. The driver testified that he did not see the decedent at any time before striking him. There is evidence that the driver did not give the decedent any warning of his approach.

The speed at which the ambulance traveled while backing was estimated at anywhere from 5 to 30 miles per hour by various witnesses at the trial.

The decedent, a carpenter who had been working for several months at Community Hospital, apparently walked in a diagonal manner across the driveway. The evidence discloses that he was walking in a straight path and was facing toward the exit doors. The only eye witness to the collision testified that he saw the ambulance backing toward the exit door in violation of the one-way traffic pattern, and noticed that the ambulance was cutting across the driveway over which the decedent was walking. The decedent did not look back at that time to see the ambulance.

The eye witness testified that when the ambulance was approximately 6 feet from the decedent, he yelled "Look out!" He further testified that at this point the decedent turned his head to the right and looked at the ambulance. An instant later the collision occurred.

The doctrine of sudden emergency sets up a very fine line as to where the doctrine should start and stop. The appearance of the danger must be so imminent that the endangered person has no time for deliberation; but, that person must still be aware that he is in peril. *Dimmick* v. *Follis* (1953), 123 Ind. App. 701, 111 N.E.2d 486; *Doi* v. *Huber* (1969), 144 Ind. App. 451, 247 N.E.2d 103.

If the endangered person has no knowledge of his peril until after he has been injured, then the doctrine of sudden emergency is not available to him. *Baker* v. *Mason* (1968), 253 Ind. 348, 242 N.E.2d 513.

On the other hand, if an endangered person is aware of his peril and has sufficient time to choose a course of action in a reasonable manner then, also, the doctrine of sudden emergency is unavailable.

This court was faced with a factual situation strikingly

similar to the one in the case at bar in the case of *Zoludow* v. *Keeshin Motor Express* (1941), 109 Ind. App. 575, 580, 581, 34 N.E.2d 980. In *Zoludow* the complaint was quite similar to the one in the case at bar in that it alleged that the defendant-appellee was operating a truck negligently, carelessly, at a dangerous speed, and gave the plaintiff-appellant no warning of the danger to him. The injured party tendered an instruction on sudden emergency which the court refused to give to the jury. On appeal this court stated as follows:

> "There was evidence to the effect that the appellant was given no warning, by the driver of the appellee's truck, of its approach; and the appellant testified that he was not aware of the approach of the appellee's truck until he heard the rumble of the same immediately behind him. As he turned his head to look to the rear, he was struck by the appellee's truck.
>
> There was also evidence that the driver of the appellee's truck did not see the appellant until he was within six or eight feet from him.
>
> The only other instruction involving the duty which the law imposed upon the appellant for his own safety was the appellant's tendered instruction number five, which defines reasonable care. It is our opinion, that under the circumstances disclosed by the evidence, the appellant was entitled to an instruction as to the duty imposed upon him when suddenly confronted with peril. Our courts have frequently announced the rule, that one in a position of peril, not created by his own negligence, has a right to make a choice of the means to be used to avoid peril, and he is not held to a strict accountability if he takes an unwise course. *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N.E. 1005; *Chicago, etc., R. Co.* v. *Luca* (1930), 91 Ind. App. 521, 170 N.E. 564; *Cole Motor Car Co.* v. *Ludorff* (1916), 61 Ind. App. 119, 111 N.E. 447.
>
> The appellant's tendered instruction number five and one-half was a correct statement of the law applicable to the appellant's position as disclosed by the evidence, and was not embodied in any other instruction. It was, therefore, error to refuse this instruction so tendered."

We note that in *Zoludow* the plaintiff had no knowledge of his danger until he heard the rumble of a truck behind him

when the truck was within 6 to 8 feet of him. In the case at bar the evidence discloses that the decedent became aware of his peril when the ambulance was approximately 6 feet from him. In *Zoludow* the injured party who had been walking along the highway looking straight ahead, turned his head toward the rear and was immediately struck by appellee's truck. In the case at bar the decedent turned his head toward the ambulance and was struck almost immediately.

This court, in *Zoludow*, held that the refusal of the tendered instruction was reversible error and it is our opinion that the same reasoning and the same result must prevail in the case at bar.

This court has recently held that it is erroneous for the trial court to refuse instructions which are supported by the evidence and are consistent with the theory of the case. *Barnes* v. *Deville* (1973), 155 Ind. App. 387, 293 N.E.2d 54. Our Supreme Court held, in the case of *Gamble* v. *Lewis* (1949), 227 Ind. 455, 465, 85 N.E.2d 629, as follows:

". . . Under the facts in this appeal involving the doctrine of sudden peril, this instruction should have been given, and its refusal was error. *Zoludow* v. *Keeshin Motor Express* (1941), 109 Ind. App. 575, 34 N.E.2d 980. A refusal to give a requested instruction which correctly states the law applicable to the facts in issue is error unless the substance of the requested instruction be covered by other instructions given to the jury. . . ." See, also, *Buckner* v. *Wilson, supra; Sheridan* v. *Siuda* (1971), 150 Ind. App. 395, 276 N.E.2d 883; *Kiger* v. *Arco Auto Carriers, Inc.* (1969), 144 Ind. App. 239, 245 N.E.2d 677; *McCraney* v. *Keuchenberg, supra;* and *Faulkner* v. *Waterman* (1972), 153 Ind. App. 573, 288 N.E.2d 269.

Having found reversible error, we need not write on any other specifications of alleged error. *Barnes* v. *Deville, supra; B&O RR.* v. *Brown* (1972), 154 Ind. App. 818, 290 N.E.2d 742; *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N.E. 2d 127.

It is our opinion, as hereinabove stated, that the evidence clearly supports an instruction on sudden emergency and the authorities cited herein require that we reverse this cause and remand it to the trial court for a new trial.

Cause reversed and remanded for a new trial.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 301 N.E.2d 791.