JACK J. ANDERSON, GULF OIL CORPORATION *v.*
MYRON EARL WESTERN.

[No. 1-274A24. Filed December 17, 1974.]

*Keith C. Reese, Franklin A. Safrin, Rocap, Rocap, Reese & Young,* of counsel, of Indianapolis, *Ralph M. Foley, Foley & Foley,* of counsel, of Martinsville, for appellants.

*W. Scott Montross, Townsend, Hovde & Townsend,* of Indianapolis, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Gulf) brings this appeal from the granting of a motion for judgment on the evidence in favor of the plaintiff-appellee (Western). Gulf

also argues that it was error to instruct the jury on damages concerning Western's pension rights. In neither instance do we find reversible error.

The facts most favorable to Gulf are as follows:

On December 12, 1968, a tanker truck driven by Anderson, a Gulf employee, collided with the rear of a truck driven by Western at a railroad crossing just south of the intersection of US 31 and State Road 32. Prior to the collision, Anderson was driving at 45-50 miles per hour some 150 feet behind Western's truck. When Anderson was approximately 600 feet from the railroad crossing, he started gearing down in order to stop at the crossing as required by law. When Anderson applied the brakes his foot slipped off the brake pedal and wedged between that pedal and the accelerator. He then grabbed the emergency brake in an attempt to slow down his truck. At this time Western had completed his required stop and was slowly moving away from the crossing. Because of oncoming traffic, Anderson was unable to pass on the left and as a result rear-ended Western's truck.

Western sued Gulf for his injuries sustained in the accident. At the trial Anderson testified:

"Q. Now, Mr. Anderson, from the time you first saw Earl Western driving his truck until the time you hit him, was there anything unusual about the way he operated his truck?

A. No sir.

Q. Did he proceed in the truck at a normal speed until he got to the railroad crossing?

A. Yes, sir.

Q. Did he make a normal stop?

A. Yes, sir.

Q. Did he put on his flashers to indicate he was stopping?

A. Yes, sir.

Q. And you knew that he was going to stop when he came to that railroad crossing, didn't you?

A. Yes.

Q. You knew it was a matter of law, didn't you?

A. Yes.

Q. You aren't contending that he did anything to contribute to this accident, are you?

A. No.

Q. Now as I understand it, Mr. Anderson, your version of this accident is that your truck hit Mr. Western's because your shoe slipped off the brake pedal and got wedged between the brake pedal and the accelerator, is that right?

A. Yes, sir.

Q. And your shoe slipped because you had fuel oil on it, is that not correct?

A. Yes, sir.

Q. Now you knew that you had fuel oil on those shoes before this accident happened, didn't you?

A. Yes, sir.

Q. In fact, you knew it back when—an hour or half an hour ago, you loaded up at Clairmont, didn't you?

A. Yes, sir.

Q. How did you get that oil on your shoes?

A. By loading the truck.

Q. What kind of shoes did you have on at this time?

A. They was leather soled shoes.

Q. And was there—what was the composition of the brake pedal?

A. Well, the brake pedal was metal, approximately six to eight inches tall, two or three inches wide.

Q. Had no rubber pad or anything on it?
A. No, sir.

Q. Just plain metal?
A. Yes.

Q. Now you knew didn't you, Mr. Anderson, that this fuel oil on your shoes with the leather soles would make that shoe slippery?
A. Yes, sir.

Q. And you knew that with a slippery shoe sole such as you had from the fuel oil it was liable to slip off that metal brake pedal, didn't you?
A. Yes, sir.

Q. In fact, you could expect that to happen, could you not?
A. No, sir.

Q. Well, it had happened to you before, hadn't it?
A. Yes.

Q. So when it happened it wasn't a surprise to you, was it?
A. No, not really.

Q. Was it common for you to drive with oil on your shoes?
A. No.

Q. Well, in this instance you knew you had it on your shoes, didn't you?
A. Yes.

Q. Now I take it that since you knew about it, and felt you ought to take some special precautions to prevent just exactly what happened in this accident, didn't you?
A. Yes.

Q. But you didn't take any of those precautions, did you?
A. No, not really.

Q. Now you didn't even have your normal work shoes on that day, did you?

A. No, I didn't.

Q. Tell us what your normal work shoes are, or were at the time.

A. ——————— shoes, steel-toed, oil-resistant soles.

Q. Oil-resistant soles. And the purpose of oil-resistant soles is so they don't get slippery and slip off things, is that not correct?

A. That's correct.

Q. And that's why you usually wore them?

A. Yes.

Q. And the fact that you had leather soles on put you on notice that this oil could make the brake pedal slippery, didn't it?

A. Yes, sir."

After all the evidence was presented, Western moved for a judgment on the evidence as to liability. The trial court granted the motion and subsequently gave plaintiff's instruction no. 1, which provided:

"I instruct you that your verdict in this case must be for the plaintiff and the only issue for your consideration is the amount of damages to be awarded."

The jury returned a verdict for the plaintiff in the amount of $94,541.00, which was later reduced by the trial court to $83,761.46.

Gulf first argues that the trial court erred in granting the motion for judgment on the evidence, and thus removing the issue of liability from the consideration of the jury.

The motion for judgment on the evidence is provided for by Ind. Rules of Procedure, Trial Rule 50 which provides in part:

"Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence . . . the court shall withdraw such issues from the jury and enter judgment. . . ."

It is well settled that this motion should be granted only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160; *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N.E.2d 849; *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784.

While conceding that the testimony of Anderson was uncontradicted, Gulf argues that reasonable men could differ as to the inferences to be drawn from that evidence and, therefore, the issue of negligence should have been submitted to the jury.

Negligence is defined as:

". . . The failure to do what a reasonable careful and prudent person would have done under the same or like circumstances, or the doing of something which a reasonably careful and prudent person would not have done under the same or like circumstances; in the words, negligence is the failure to exercise reasonable and ordinary care." *LaNoux* v. *Hagar* (1974), 159 Ind. App. 646, 308 N.E.2d 873, 877.

Anderson, by his own admissions, was not exercising ordinary and reasonable care. His testimony makes it clear that he was aware of his oily shoes and of what would result from their contact with the metal brake pedal. He took no precautions to avoid that result and even stated that it was no surprise to him when his foot did slip and wedge between the pedals. Gulf has argued that the jury might have found that Anderson acted as any reasonable man would in a sudden emergency situation. The doctrine of sudden emergency has been recognized to relieve a person of liability for an injury resulting from his conduct, even if

another course of conduct would have been more judicious or even avoided the injury. *Bundy* v. *Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 791. However, that doctrine does not apply when the emergency situation was created by the defendant's own negligence. *Bundy, supra.* For that reason the doctrine is inapplicable here.

In review of Anderson's uncontradicted testimony, we are of the opinion that the trial court was correct in withdrawing the liability issue from the jury. While a trial court should be reluctant to grant a motion for judgment on the evidence, especially in favor of the party with the burden of proof, in a case such as this where only one reasonable inference can be drawn from the evidence the motion is properly granted.

Gulf has also argued that the form of the motion itself did not conform to TR. 50. We need not consider this argument since it was not brought to the trial court's attention in the motion to correct errors. Ind. Rules of Procedure, Trial Rule 59(G).

Gulf next contends that the trial court erred in giving plaintiff's instruction no. 2.

The instruction informed the jury that in determining damages, they could consider, among other enumerated factors, the effect on Western's retirement pension rights.

Gulf objects to the instruction on the ground that it was not supported by the evidence.

At the time of the accident, Western was a truck driver for the Farm Bureau. He hauled hazardous materials, such as fuel oil, within Indiana and was a contributor to the Teamsters' Pension Fund. Since childhood Western had been blind in one eye. Federal Department of Transportation regulations provided that interestate carriers of hazardous materials must have two natural eyes. Since Western was exclusively an intrastate carrier, he was not covered by the regulations.

On July 1, 1971, the Federal regulations were extended to cover all carriers of hazardous materials. After that date, Western could not have driven for Farm Bureau, since he could not have hauled hazardous materials either interstate or intrastate.

In order to collect his pension, Western was required to drive for a Teamsters' organized company until he was 57 years old. At the time of the trial he was only 51. In light of these facts, Gulf contends that irrespective of the accident Western could not have continued driving for Farm Bureau until 57 and, thus, would not realize his pension benefits.

Initially it should be noted that Gulf has not charged that the damages awarded were excessive. The failure to do so constitutes a tacit admission that the award was supported by sufficient evidence on the other elements of damages. *Brattain* v. *Herron* (1974), 159 Ind. App. 663, 309 N.E.2d 150; *Indianapolis Transit, Inc.* v. *Williams* (1971), 148 Ind. App. 649, 269 N.E.2d 543.

Moreover, we cannot agree that the instruction was not supported by the evidence. Retention of Western's pension rights did not depend upon his continued employment with Farm Bureau or his ability to haul hazardous materials. Western testified that had the collision not rendered him physically unable to drive the same rig that he had driven for Farm Bureau, he would have continued in the Teamsters' pension program by driving for one of several intrastate haulers of non-hazardous materials. This was sufficient evidence of probative value from which the jury could infer damages. *Accord, Cooper* v. *High* (1974), 262 Ind. 405, 317 N.E.2d 177.

Judgment affirmed.

Garrard and Lybrook, JJ., concur.

NOTE.—Reported at 320 N.E.2d 759.