PERRY *v.* STATE OF INDIANA.

[No. 769S163. Filed February 2, 1971. No petition for rehearing filed.]

*E. Kent Moore, Carl J. Sandy,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

GIVAN, J.—Appellant was convicted of the crime of rape of a female under the age of sixteen years and was sentenced to the Indiana State Prison for a period of not less than two nor more than twenty-one years.

The record in this case discloses the following facts:

On November 18, 1967, the prosecuting witness had attended a ball game in Lafayette, Indiana, with some of her friends. After the game she and her friends first went to a nearby drug store, then to the home of Joseph Reynolds, who was one of the group of young people. After arriving at the Reynolds home the group listened to records and drank a few bottles of beer. At approximately 12:25 A.M. on November 19 the prosecuting witness left the Reynolds home with John Perry, the appellant herein, her girl friend, who was sixteen years of age, and Joe Reynolds. The two couples got in the appellant's automobile. Before leaving Lafayette they stopped in order that prosecuting witness might make a telephone call to her home stating that she was going to stay all night with a girl friend. After the phone call was made the two couples drove to Indianapolis. The appellant and the prosecuting witness occupied the front seat and Joe Reynolds and the other girl occupied the back seat. The evidence is that both the prosecuting witness and Joe Reynolds slept during most of the trip.

Upon returning to Lafayette they went directly to the Reynolds home where Joe Reynolds and his date entered the house, leaving the prosecuting witness and appellant in appellant's car. From that point on there is conflict in the evidence, the appellant testifying that he attempted to take

the prosecuting witness to her home but that his car broke down on the way, and after walking the prosecuting witness back to the Reynolds house he obtained the aid of his brother to remove the stalled automobile from the street. While in the process of getting his automobile off the street the appellant was arrested and charged with the crime of rape of the prosecuting witness.

The prosecuting witness testified that she went to sleep during the trip from Indianapolis to Lafayette and that the next thing she knew she was awakened by the appellant; that Joe Reynolds and his date were no longer in the car; that they were on a side road somewhere in the country and that the appellant forced her to have sexual relations with him. She testified that they talked for awhile; that appellant again had sexual relations with her, then started the car and drove for about ten or fifteen minutes, at which time the prosecuting witness first realized where she was when she recognized a trailer court and the Sarge Biltz restaurant at the intersection of State Road 25 and U. S. 52 Bypass on the northeast side of Lafayette. She stated that before they reached the Reynolds home the automobile broke down; that she and the Appellant walked the remaining distance. Upon arriving at the Reynolds home she told her girl friend what had occurred, her girl friend called the prosecuting witness' mother, and after consultation with the two girls the mother called the Lafayette police.

The prosecuting witness was taken to St. Elizabeth's Hospital in Lafayette where Dr. Thomas W. Haas conducted a pelvic examination. He testified that from his examination he found small hemorrhages in the girl's vagina with abrasions and small tears to the left and right of the midline at the front of the vagina; that there were multiple hemorrhages into the hymeneal ring. That there was a tear through the hymen, then through the posterior midline of the vagina. That microscopic examination of fluid taken from the vagina showed that presence of spermatozoa. From these findings it was the

opinion of the Doctor that the girl had recently had sexual intercourse terminating in the deposit of sperm within her vagina, and that in all probability it was her first act of sexual intercourse. The evidence showed the alleged victim to be under the age of sixteen years.

Appellant first alleges that he had been denied due process of law in that the prosecuting attorney failed to disclose the mental and moral history of one of the state's witnesses. The witness in question is not the prosecuting witness, but is the girl friend of the prosecuting witness, who testified at the trial. It is appellant's contention that when the trial court sustained appellant's motion "for disclosure of all exculpatory material and information and for witnesses" the prosecuting attorney wilfully failed to comply with the court's order. The State does not deny that it was well known to the prosecuting attorney that the witness was under the care of a county agency for moral and mental rehabilitation, but that this information was not furnished by the State to the appellant. The State did pursuant to the order advise the appellant that the witness had told conflicting stories as to whether or not she had had sexual intercourse with Joe Reynolds on the night in question. Appellant, however, insists that the additional information which was withheld by the prosecution would have been valuable to the defense in its cross-examination of the witness. In support of his position the appellant cites the case of *Giles* v. *Maryland* (1967), 386 U. S. 66, 17 Law Ed. 2d 737, 87 S. Ct. 793. The defendants in the *Giles* case had been charged with the crime of rape. It was alleged that they had been deprived of due process in that the State had withheld information that the prosecuting witness had previously been found to be beyond parental control, and that five weeks after the alleged rape and over three months before the trial in which the defendants had been convicted the girl had had sexual relations with two men at a party and later that night took an overdose of sleeping pills and was hospitalized in the psychiatric ward of a local hospital for nine days as an attempted

suicide. After first complaining to the authorities that the men had raped her, she later refused to say to police officers that she had been raped and told them of previous relations with the men and of numerous acts of intercourse with boys and men over a period of two years. It was further alleged that the state also withheld information that after the attempted suicide incident the girl was committed to the Montrose School for Girls where she remained for some time. After observing the above facts the Supreme Court of the United States stated at page 74:

"... Thus the case presents the broad questions whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial. We find, however, that it is unnecessary, and therefore inappropriate, to examine those questions. In *Napue* v. *Illinois, supra,* 360 US, at 269, 3 L ed 2d at 1220, we held that a conviction must fall under the Fourteenth Amendment when the prosecution 'although not soliciting false evidence, allows it to go uncorrected when it appears,' even though the testimony may be relevant only to the credibility of a witness. We now have evidence before us, which neither Judge Moorman nor the Court of Appeals considered, which in our view justifies a remand to the Court of Appeals for its consideration whether that court should order an inquiry to determine whether such a situation arose at petitioners' trial. The evidence consists of two police reports, not part of the record, which came to our attention when the State at our request supplied the material considered by the trial judge in imposing sentence."

It is true as pointed out by the appellant that Justice Fortas wrote a separate concurring opinion in the *Giles* case and that Justice Harlan wrote a dissent, and that Justice Fortas and Justice Harlan debate the question of what should and what should not be required of the State on a motion to produce. There can be no question of the validity of Justice Fortas' statement, "The State's obligation is not to convict, but to see that, so far as possible, truth emerges." However, the facts of the *Giles* case vary so widely from the facts in

the case at bar that we do not find the *Giles* case to be authority to support appellant's contention here.

In the case at bar the appellant is not claiming that there was any information withheld concerning the prosecuting witness. She testified in detail as to the occurrences of the evening, including appellant's attack upon her. On the other hand the witness about whom the information was withheld by the State did not testify concerning the crime itself. Her testimony was confined to the activities of the group of young people that evening, most of which was also testified to by other witnesses. She did testify that when the prosecuting witness returned to the house she began to cry and later became hysterical, and that the witness called the girl's mother. However, these facts were well established by the girl's mother. The physical condition of the girl from which a jury could have reasonably drawn the conclusion that she had been the victim of a rape was presented by an examining physician. Although it was not mentioned on direct examination of the witness in question, the appellant through cross-examination brought out that the witness had also claimed to police officers that she had been raped by the appellant that evening and that this charge of rape against the appellant had subsequently been dismissed. When the trial court ordered the prosecuting attorney to disclose all exculpatory material, information and witnesses, the prosecution fully complied by furnishing the names of the witnesses, including the one in question, and even went so far as to inform the appellant that the witness had told conflicting stories concerning her own activities that evening. We do not believe the *Giles* case holds that the prosecuting attorney is required upon such a request to delve into the personalities and the history of each witness and to furnish all information to the defense. We cannot visualize a place at which the State could be deemed to have fully discharged its duty if this were held to be the requirement. Many things in the past of a witness might be known to the State which could conceivably be asked a witness on

cross-examination to test his competency as a witness. However, we do not feel that the burden is on the State to furnish a defendant with all of the information which might be learned about any particular witness. It might well be held that the State would be held to a stricter accounting as to information it might have in its possession concerning the prosecuting witness herself in a case such as the one at bar. However, we do not find it necessary to pass on that question in this case. Suffice it to say that the evidence given by the witness in question in this case was only cumulative and did not directly connect the appellant with the alleged crime. In addition, an examination of the cross-examination by appellant's attorneys indicates that they were quite successful in presenting to the jury that the witness was in fact quite promiscuous and unusual in her sexual behavior. It appears that very little could have been added by using the information which appellant claims was withheld by the prosecuting attorneys. We, therefore, hold that appellant was not harmed by the failure of the prosecuting attorney to make the disclosure. We find no denial of due process as claimed by the appellant.

Appellant next alleges the trial court erred in allowing police officer Charles Mahlke to testify that the distance from the intersection of State Road 25 and U.S. 52 Bypass on the northeast side of Lafayette to the nearest county line was approximately fourteen miles. Appellant claims the officer was not qualified as an expert to give such distances. It is the claim of the appellant that this testimony by the officer was the only testimony which fixed the venue of the case in Tippecanoe County in that the prosecuting witness had testified that she was raped on a country road, and that it took some ten to fifteen minutes from the spot, driving at a moderate rate of speed, to reach the intersection. The officer had testified that he was quite familiar with roads in the community; that he had driven a truck over these roads in the past; that he often went in the direction in question to go

fishing and that his estimate of the distance was only an approximation. Opinions of lay witnesses are often admissible upon nontechnical subjects such as estimates of speed, distance, height, size, etc., for the reason that in such cases it is difficult or impossible for the witness to explain his mental processes to the jury. He can however first describe his familiarity with the subject then state his opinion or best judgment. The fact that the opinion is not stated in exact figures and that the witness may give his testimony in the form of an estimate makes it no less admissible as direct evidence of an observed fact. 31 Am. Jur. 2d, *Expert and opinion Evidence*, § 155, p. 717; 23 C.J.S., *Criminal Law*, § 875.

Here the witness did not testify as to the venue of the alleged offense which was the ultimate fact for the jury to decide. The girl had given the facts known to her concerning the alleged attack. Officer Mahlke merely furnished further evidence as to the distance from landmarks described by the girl to the Tippecanoe County line.

This Court has held that venue need not be proven by the prosecuting witness alone, but may be proved from all the evidence. *Reid* v. *State* (1967), 249 Ind. 247, 231 N. E. 2d 808, 12 Ind. Dec. 222. Proof of venue may be made by circumstantial evidence. *Shipman* v. *State* (1962), 243 Ind. 245, 183 N. E. 2d 823; *Weaver* v. *State* (1963), 243 Ind. 560, 187 N. E. 2d 485, 1 Ind. Dec. 56; *Zink* v. *State* (1968), 250 Ind. 587, 236 N. E. 2d 589, 14 Ind. Dec. 252.

We, therefore, hold that the court did not err in permitting the testimony of Officer Mahlke and that the jury was justified in finding from the facts presented that the crime did in fact occur in Tippecanoe County, Indiana. The trial court is, therefore, affirmed.

Arterburn, C.J., and DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 266 N. E. 2d 4.