**Lola J. EVANS, Personal Representative of Kenneth E. Wyant, Deceased, Plaintiff-Appellant,**

v.

**Lewis E. PALMETER and Transport International Pool, Inc., Defendants-Appellees.**

No. 34A02–8609–CV–347.

Court of Appeals of Indiana, Fourth District.

July 8, 1987.

Rehearing Denied Aug. 12, 1987.

---

Courtney B. Justice, Logansport, Thomas J. Trauring, Fell, McGarvey and Trauring, Kokomo, for plaintiff-appellant.

Charles F. Robinson, Jr., Linda Y. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for defendant-appellee Lewis E. Palmeter.

Robert C. Wolf, Johnson, Gross, Densborn & Wright, Indianapolis, for defendant-appellee Transport Intern. Pool, Inc.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Lola Evans, the personal representative of the estate of Kenneth Wyant, appeals a jury verdict in favor of Lewis Palmeter and a summary judgment ruling in favor of Transport International Pool, Inc. We reverse as to the jury's verdict and affirm on the summary judgment.

## FACTS

On August 6, 1984, Kenneth Wyant was northbound on his motorcycle on State Highway 29. Wyant was just north of the town of Middlefork. Lewis Palmeter had been following Wyant in a tractor-trailer at a distance of 60 feet. Palmeter had followed Wyant for 25–30 miles at an estimated speed of between 55 and 60 miles per hour. For an unknown reason, Wyant suddenly slowed down on the highway. Palmeter had been looking into his rear view mirrors. When he looked back to the road, he saw Wyant's brake lights. Palmeter slammed on his brakes but was unable to stop his vehicle in time and struck Wyant's motorcycle. Wyant was thrown under the tractor-trailer and died from his injuries. The accident occurred on a clear, sunny day.

At the scene, police noticed the odor of alcohol on Palmeter's breath. Police transported Palmeter to the county jail. There, Palmeter's blood alcohol content tested at .025%. Palmeter later admitted that the night before the accident, he drank a pint of vodka alone until 2:00 a.m.

## ISSUES

Although Evans presents six issues for review, the following are dispositive:

1. Whether the trial court committed reversible error in giving a sudden emergency instruction.

2. Whether the trial court erred in granting summary judgment in favor of Transport International Pool.

## DISCUSSION AND DECISION

*Issue One*

■ Evans alleges that the trial court erred in giving a "sudden emergency" instruction. The instruction was as follows:

"You are constructed [sic] that when one is confronted with a sudden emergency not of his own making, and does not have sufficient time to determine with certainty the best course to pursue, then under such circumstances, he is not held to the same accuracy of judgment that would be required of him if he had time for deliberation. Accordingly, if you find from a fair preponderance of the evidence of this case that the defendant, Lewis E. Palmeter, was confronted with a sudden emergency not of his own making and did not have sufficient time to determine with certainty the best course to pursue, and if you further find from a fair preponderance of the evidence that the Defendant, Lewis E. Palmeter, then and there exercised such care as an ordinary prudent person would have exercised when confronted by a similar emergency, then the defendant, Lewis E. Palmeter, would not be liable for damages resulting from the consequences of such emergency. Even though, Defendant Lewis E. Palmeter might have taken another course of conduct which might have been more judicious or safer, or might even have avoided the collision, and under certain circumstances, your verdict should be for the defendant, Lewis Palmeter on plaintiff's complaint." (Record at 568–69).

The sudden emergency doctrine was developed as a recognition "that the law does not require the same accuracy of judgment of one who has innocently been deprived of time to deliberate his actions as it requires of one who has the opportunity for deliberation. *Stein v. Yung*, (1985) Ind.App., 475 N.E.2d 52, 54 [*trans. denied*]". *State v. Magnuson* (1986), Ind.App., 488 N.E.2d 743, 750, *trans. denied*. It is an affirmative defense to either negligence or contributory negligence. *Stein*, at 54. Our supreme court summarized the essential elements of a sudden emergency claim:

"(1) That the appearance of danger or peril was so imminent that he had no time for deliberation. *Hedgecock v. Orlosky* (1942), *supra*, 220 Ind. 390, 397, 44 N.E.2d 93;

"(2) That the situation relied upon to excuse any failure to exercise legal care was not created by his (appellant's) own negligence. *Dunbar v. Demaree* (1936), 102 Ind.App. 585, 601, 2 N.E.2d 1003; *Redd v. Indianapolis Railways* (1951), *supra*, 121 Ind.App. 472, 97 N.E.2d 501;

"(3) That his conduct under the circumstances was such as the law requires of an ordinarily prudent man under like or similar circumstances. *Gamble v. Lewis* (1949), *supra*, 227 Ind. 455, 85 N.E.2d 629; *Zoludow v. Keeshin Motor Express* (1941), 109 Ind.App. 575, 34 N.E.2d 980."

*Taylor v. Fitzpatrick* (1956), 235 Ind. 238, 247, 132 N.E.2d 919, 924; *see also Magnuson*, at 750; *Taylor v. Todd* (1982), Ind. App., 439 N.E.2d 190, 193; *Lovely v. Keele* (1975), 166 Ind.App. 106, 109–10, 333 N.E.2d 866, 868. Although the issue of sudden emergency generally is a question for the jury's determination, the threshold determination of whether the doctrine applies and justifies an instruction rests with the trial court. *Stein*, at 54.

In the present case, the sudden emergency doctrine does not apply. The driver of the truck, Palmeter, testified at trial that he followed Kenneth Wyant at a distance of 60 feet while going about 60 miles per hour. Palmeter had followed Wyant's motorcycle in this manner for over 25 miles. Simple arithmetic reveals that a vehicle traveling at 60 m.p.h. traverses a distance of 88 feet per second. Thus, Palmeter and the motorcyclist were less than one second apart immediately prior to the accident. It is generally recognized that the average reaction time for a vehicle's driver is three-fourths of a second. *Bunch v. McMillian* (1978), Mo.App., 568 S.W.2d 809, 812 (Missouri courts take judicial notice of three-fourths of a second in absence of affirmative proof); *Tate v. Borgman* (1958), 167 Neb. 299, 306, 92 N.W.2d 697, 701 (favorable dicta, citing Missouri's approach); *Ardis v. Reed* (1965), 86 N.J.Super. 323, 335, 206 A.2d 890, 896 (in dicta, quotes from *Wiebe* with approval); *State v. Bush* (1962), 88 Ohio Abs. 161, 166, 182 N.E.2d 43, 47 (judicial notice); *Wiebe v. Seely* (1959), 215 Or. 331, 366, 335 P.2d 379, 395 (favorable dicta, citing other jurisdictions like Ohio and Missouri); *Casey v. Standish* (1973), Tex.Civ.App., 492 S.W.2d 629, 631 (a matter of law); *cf. Kaan v. Kuhn* (1947), 64 Wyo. 158, 173, 187 P.2d 138, 143 ("common knowledge" of at least one half second reaction time). Thus, since Palmeter was traveling 88 feet per second, the distance for him simply to react was 66 feet, or six feet greater than the distance between him and Wyant.

Although our legislature has not specifically mandated a requisite safe following distance for vehicles traveling at various velocities, it did enact a statute which generally encompasses such activity. Indiana Code section 9–4–1–73(a) provides, "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles, the time interval between vehicles, and the condition of the highway." It is generally agreed that a vehicle following another should keep such distance from the vehicle ahead so as to be able to provide for the contingency of the vehicle ahead suddenly stopping. 2 Kelly, *Blashfield Automobile Law and Practice* § 113.15 (3d ed. 1979); *see also* 7A Am. Jur.2d *Automobiles and Highway Traffic* § 261 (1980). "In some cases, ... it has been held *as a matter of law*, that a motorist who collided with a vehicle ahead which was slowing down was negligent in failing

to keep a proper distance ahead." 7A Am. Jur.2d *Automobiles and Highway Traffic* § 856 (1980) (emphasis added). The National Safety Council recommends that, under ideal conditions, a truck driver should allow at least four seconds between his vehicle and the vehicle ahead. Defensive Driving Course—Professional Truck Driver Notebook, National Safety Council 22 (1986). Palmeter was less than one second behind Wyant. The National Safety Council also estimates that the safe stopping distance for a truck going 60 m.p.h. is 426 feet under ideal conditions. Instructor's Manual for Defensive Driving Course—Professional Truck Drivers, National Safety Council 3–9 (1st ed. 1986). Palmeter was following Wyant at a distance of 60 feet. Thus, Palmeter should have been following Wyant at a much, much greater distance.

Also, Palmeter at trial admitted that he was inattentive. Palmeter took his eyes off the road to look into his rear view mirrors to check on his brakes. Although it is true that momentarily diverting one's eyes from the road is not negligent as a matter of law, *Campbell v. Hammontree* (1975), 163 Ind.App. 160, 322 N.E.2d 725, Palmeter's acts of following too closely and looking twice in his mirrors combined to be a cause of the accident. When Palmeter checked his brakes by looking at the mirrors, he should have reduced his speed to put more distance between his vehicle and Wyant's motorcycle.

The sudden emergency instruction was given erroneously because Palmeter brought on the emergency himself. In *Cartwright v. Harris* (1980), Ind.App., 400 N.E.2d 1192, 1195, *trans. denied,* Judge Miller opined that "before a party is entitled to the benefits of the sudden emergency doctrine, his conduct must be free from negligence which contributed to the creation of the emergency itself." If Palmeter had followed at a safe distance and had remained attentive, Wyant's application of his brakes would not have created an emergency. Therefore, the sudden emergency doctrine was inapplicable.

We further do not believe that the court's sudden emergency instruction constituted harmless error. Generally, the trial court's giving of an instruction which is irrelevant to the issues and not applicable to the evidence is error. However, it is grounds for reversal only if it appears that the jury's verdict could have been predicated upon such an instruction. *Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 122, *trans. denied; Lewis v. Davis* (1980), Ind.App., 410 N.E.2d 1363, 1368. We are mindful that other Indiana decisions hold that giving a sudden emergency instruction is harmless error. *E.g., Baker v. Mason* (1968), 253 Ind. 348, 242 N.E.2d 513; *Taylor v. Todd* (1982), Ind.App., 439 N.E.2d 190; *Lovely v. Keele* (1975), 166 Ind.App. 106, 333 N.E.2d 866; *Stansberry v. Clabbers* (1975), 164 Ind.App. 594, 330 N.E.2d 123. However, in the facts of the present case, the jury could have predicated its verdict upon the instruction.

In *Baker,* our supreme court faced a case where a three year old child was struck by an automobile. The driver saw the child one block away. After that, the driver did not see the child again until after hearing a "thud". The court held that the trial court erred in giving a sudden emergency instruction since the driver was unaware of any emergency or peril until after the impact. However, the court noted that the error was harmless since (1) the jury viewed the instruction as inapplicable since the driver perceived no emergency, or (2) the jury merely placed the reasonably prudent person in the driver's situation.

In reaching its conclusion, our supreme court in *Baker* cautioned as follows:

"This is not to say that, in a proper factual situation, an unwarranted 'sudden emergency' instruction could not in and of itself constitute a reversible error. In *Dwyer v. Christensen* (1956), 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734, the party requesting the instruction had probably been confronted by a sudden emergency, but *the evidence indicated that it was his negligence which had created the emergency.* The South Dakota Court held that a sudden emergency instruction would not be warranted since

the emergency was created by the party's own conduct. Furthermore, *the instruction could prejudice and mislead the jury since they could find that the party was actually confronted with a sudden emergency.* Accord, *Pullin v. Nabors* (1961), 240 Miss. 864, 128 So.2d 117."

*Baker*, 253 Ind. at 353–54, 242 N.E.2d at 517 (emphasis added). This is precisely the issue confronting us. Palmeter's negligence caused the emergency. Furthermore, the instruction could have affected the verdict since the jury could have found that Palmeter was faced with a sudden emergency. Therefore, the error was not harmless and constitutes grounds for reversal.

### Issue Two

Our standard of review in summary judgment cases is the same as that used by the trial court. *Brenneman Mechanical and Electrical, Inc. v. First National Bank* (1986), Ind.App., 495 N.E.2d 233, *trans. denied; First Savings and Loan Ass'n. v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, *trans. denied.* Summary judgment is a procedure for applying the law to the facts when no factual controversy exists, *Reeder v. Ramsey* (1984), Ind. App., 458 N.E.2d 682, and is properly granted where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In reviewing a motion for summary judgment, we look to see if any genuine issue of fact exists. We construe all matters liberally in favor of the nonmoving party and resolve all doubts against the movant. *Brenneman*, at 240; *Reeder*, at 684. Summary judgment may not be used as a substitute for trial where factual disputes remain, or where undisputed facts give rise to conflicting inferences which could affect the outcome of the case. *Reeder*, at 684.

Evans contends that different inferences arise from the evidence making summary judgment in favor of Transport International Pool (TIP) inappropriate. TIP leased the trailer to Palmeter. Evans contends that a brake was faulty when Palmeter obtained the trailer from TIP on the morning of the accident. Evans alleges that the faulty brake caused the accident. Evans's allegations are premised upon a written statement which Palmeter gave to police immediately after the accident wherein he stated:

"Shortly after noon I Lewis Palmeter was traveling north on S.R. 29 following a man on a motorcycle. I checked my rearview mirror on the passenger side and because of a tight brack [sic] I took another look. When I looked back the motorcycle has his brakes on I set my brakes but I hit his rear tire. /s/ Lewis Palmeter"

Record at 376. Later, Palmeter testified that the brake was not defective or malfunctioning at the time of the accident. On the morning of the accident, one of the trailer's brakes was "tight". Palmeter testified that when he first hooked up to the trailer that morning, he had a slow releasing brake. However, Palmeter testified that the brakes operated perfectly when he left TIP and that they did not exhibit any problems during the remainder of the day. He testified that when he was following Wyant, he looked into his rearview mirror not because the brakes were faulty, but rather as a normal safety precaution. Furthermore, TIP presented uncontroverted evidence that the trailer's brakes were not defective or malfunctioning.

Evans claims that the jury could infer from Palmeter's written statement regarding a "tight" brake that defective brakes caused the accident. This is the only possible piece of evidence which supports her claim. However, when this statement is read along with all the other evidence at trial, it is apparent the only inference is that the brakes were not defective. Palmeter's written statement in no way contradicted his later explanations about the "tight" brake earlier that morning. Therefore, the trial court did not err in granting summary judgment in favor of TIP.

Costs of this proceeding to be levied as follows: Appellee Palmeter to be responsible for two-thirds and Appellant to be responsible for one-third.

Affirmed in part and reversed in part.

YOUNG, J., concurs.

CONOVER, P.J., dissents with separate opinion.

CONOVER, Presiding Judge, dissenting.

While I concur as to the majority's holding regarding summary judgment, I respectfully dissent as to its holding Palmeter's negligence created the sudden emergency. The majority here has simply reweighed the evidence on its own, then substituted its judgment for that of the trial court and jury in violation of several bedrock principles of Indiana appellate review. The first of these principles is this court does not reweigh the evidence. We view the evidence and all inferences which may be reasonably drawn therefrom in a light most favorable to the verdict. Where the evidence is in conflict and more than one reasonable conclusion can be drawn from it, a reviewing court cannot say the jury's verdict is contrary to law. *State v. Lovett* (1970), 254 Ind. 27, 257 N.E.2d 298, 303; *Stone v. Manship* (1987), Ind.App., 505 N.E.2d 155, 158. The function of the Court of Appeals is not to sit as a trial court, but rather to review and correct errors of law and to accept the facts as they are presented so long as probative evidence supports them. *Riverside Ins. Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796, 803. Next, it is axiomatic a jury's verdict will be set aside on appeal as contrary to law only where the evidence is without conflict, only one conclusion can be reached therefrom, and the jury has reached the wrong one. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652, 662; *Hinds v. McNair* (1955), 235 Ind. 34, 129 N.E.2d 553, 561; *Captain & Co., Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 92; *Cato Enterprises, Inc. v. Fine* (1971), 149 Ind.App. 163, 271 N.E.2d 146, 149; *Schabler v. Indianapolis Morris Plan* (1968), 142 Ind.App. 319, 234 N.E.2d 655, 657. The majority's opinion violates both these constraints.

Since the burden was on Evans to prove Palmeter's negligence in the court below, the failure of the jury to find for Evans constitutes a negative judgment. Consequently, Evans must show Palmeter was negligent as a matter of law. *Board of Com'rs of Delaware County v. Briggs* (1975), 161 Ind.App. 96, 337 N.E.2d 852, 875. I do not believe the evidence supports such a conclusion. In Indiana, no inference is created a rearward driver is negligent simply because a rear-end collision occurs. *Haidri v. Egolf* (1982), Ind.App., 430 N.E.2d 429, 432.

The majority points to three aspects of Palmeter's conduct as being negligence, claiming they in combination make Palmeter guilty of negligence as a matter of law. None of these acts alone make him negligent as a matter of law. Further, I do not agree with the majority these actions can be combined to make him negligent as a matter of law.

First, the majority summarizes its showcase piece of evidence as follows: Palmeter, the truck driver, "testified at trial that he followed Kenneth Wyant at a distance of 60 feet while going about 60 miles per hour." (Majority opinion at p. 1132). All of its syllogistic reasoning emanates from this starting point. However, the evidence on that subject was conflicting at trial.

Palmeter in fact testified he was going between 55–57 miles per hour. (R. 424). Further, the investigating officer testified Palmeter was traveling under the speed limit. (R. 37). Finally, a lay witness expressed the opinion Palmeter was not speeding. (R. 437).

A witness's opinion as to speed, distance, height, size, etc., if not stated in exact figures, but given in the form of an estimate does not render that evidence any less admissible as direct evidence of an observed fact. *Perry v. State* (1971), 255 Ind. 623, 266 N.E.2d 4, 8. Also, a witness's opinion on an ultimate fact is admissible, in the sound discretion of the trial judge. *Posey County v. Chamness* (1982), Ind.App., 438 N.E.2d 1041, 1047; *Carroll v. Lordy* (1982), Ind.App., 431 N.E.2d 118, 122; *Bell v. Horton* (1980), Ind.App., 411 N.E.2d 648, 650; *Palmer v. State* (1977), 173 Ind.App. 208, 363 N.E.2d 1245, 1248; *Rieth-Riley Const. Co., Inc. v. McCarrell* (1975), 163 Ind.App. 613, 325 N.E.2d 844, 853. Also,

see *Garr v. Blissmer* (1961), 132 Ind.App. 635, 177 N.E.2d 913, 917.

Because these lay witnesses' testimony was admitted below, there was a conflict in the evidence as to Palmeter's speed. Only the jury could resolve that conflict and determine at what speed he was traveling. This court cannot do so on appeal. With this integral part of its equation missing, the majority's "simple arithmetic" determining Palmeter was covering 88 feet per second comes unglued.

Further, any such calculations were exclusively for the jury below, not this court on appeal under Indiana law. A jury may not rest its verdict on testimony opposed to the laws of nature or clearly in conflict with scientific principles because such testimony has no probative value. However, where the court cannot say as a matter of law a witness's testimony is contrary to scientific principles, the laws of nature, or the physical facts, the question of whether such testimony does so conflict is for the jury. *Koppers Co., Inc. v. Inland Steel Co.* (1986), Ind.App., 498 N.E.2d 1247, 1253; *Connor v. Jones* (1945), 115 Ind.App. 660, 59 N.E.2d 577, 581.

Next, the majority faults Palmeter for failing to keep a proper lookout, i.e., for looking into his rearview mirror at the time the accident occurred. Again, the majority errs. Whether a driver used ordinary care in keeping a lookout for others using the roadway under the facts of a particular case is a question for the jury. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613, 617, *reh. denied.* Palmeter testified he was checking his brakes in his rear view mirror just before the accident. Although he glanced twice at his brakes, he testified he kept the motorcycle in his side vision. Momentarily diverting one's eyes from the road is not negligence as a matter of law. *Campbell v. Hammontree* (1975), 163 Ind. App. 160, 322 N.E.2d 725, 726. Accordingly, we cannot say Palmeter was negligent as a matter of law because he glanced at his rear view mirror. On appeal, we view the evidence in a light most favorable to the verdict and all inferences which may be reasonably drawn therefrom. *Stone, supra,* 505 N.E.2d at 158.

Finally, the majority places some reliance, evidently, upon the fact Palmeter's blood alcohol content tested .025%, pointing out he "later admitted" he had consumed a pint of vodka the night before. Clearly, the jury below did not determine Palmeter's ability to drive was impaired thereby. Also, it is interesting to note our legislature made the same determination generally by enacting IC 9-11-1-7.5 in 1985. It provides the evidence of blood alcohol content must be at least 0.05% but less than 0.10% by weight to be relevant evidence. Thus, by today's standards, such evidence is not even relevant.

The majority found Palmeter guilty of following too closely as a matter of law and thus in violation of IC 9-4-1-73(a). That statute provides, however,

The driver of a motor vehicle shall not follow another vehicle more closely than is *reasonable and prudent,* having due regard for the speed of such vehicles, the time interval between vehicles, and the condition of the highway. (Emphasis supplied).

After factually finding Palmeter's speed, the majority calculated the feet per second he was traveling, then factored in "average reaction time" as a matter of *judicial knowledge* and determined Palmeter hit Wyant's motorcycle before he had time to react. The majority cites no Indiana cases as precedent for taking judicial knowledge of reaction time. It does not because it cannot. No authoritative precedent in Indiana permits us to take judicial notice of reaction time as it plays a role in determining whether a driver has violated IC 9-4-1-73(a). The question of whether a driver acted reasonably and prudently under the circumstances is strictly one for the jury's resolution as the trier of fact, at least where the evidence is conflicting, as here.

In sum, whether Palmeter was traveling at an unsafe speed; whether Palmeter kept a proper lookout; and whether Palmeter was following too closely were all questions for the trier of fact. The majority

errs by treating the evidence pertaining thereto as without conflict.

The sudden emergency doctrine is an affirmative defense to negligence or contributory negligence. An instruction on the doctrine is warranted where the evidence or inferences therefrom support such a theory. While the question of sudden emergency is generally an issue for the determination of the jury, the threshold determination of whether the doctrine applies and warrants an instruction rests with the trial court. *Stein v. Yung* (1985), Ind.App., 475 N.E.2d 52, 54, *reh. denied.*

Of course, the sudden emergency doctrine may not be invoked by a party who has created the situation through his own negligence. However, whether Palmeter was negligent was a factual issue for determination by the jury in this case. On appeal, this court will not disturb a jury's decision unless the evidence is without conflict, can logically lead to but one conclusion and the jury reached another one. *Captain & Co., Inc.,* 505 N.E.2d at 93. The trial court did not abuse its discretion by giving an instruction on sudden emergency under the fact of this case in my opinion.

Finally, the evidence is undisputed Wyant had traveled at an even speed in front of Palmeter on dry pavement for 25 to 30 miles on a clear day. Then, for no apparent reason Wyant abruptly slowed his motorcycle without warning. The majority by its holding today impliedly finds *as a matter of law* such conduct was not negligent nor was it a contributing cause of the accident. I find it impossible to reach such a conclusion under the evidence supporting the judgment.

For all of these reasons, I dissent. I would affirm the trial court and jury in all things.