ALEDA M. LOVELY AND CHARLES E. LOVELY *v.* CECIL E. KEELE.

[No. 3-374A50.  Filed September 24, 1975.  Rehearing denied October 30, 1975.]

*Phil M. McNagny, Jr., Gates, Gates, & McNagny* for appellant.

*Benton W. Bloom, Bloom, Bloom, & Flect,* Columbia City, for appellee.

GARRARD, J.—Aleda Lovely was injured when the automobile in which she was a passenger struck the rear of a pickup truck. The truck, operated by defendant Keele, had just braked to a stop on the highway.

Suit was commenced by Lovely and her father to recover for her personal injuries and the medical expenses incurred. Trial by jury resulted in a verdict for Keele. In sending the case to the jury, the court gave instructions on sudden emergency and the statutory duty of a driver not to stop without signalling or until the stop can be made with reasonable safety.

On appeal Lovely contends (a) it was error to instruct on sudden emergency; (b) the evidence was insufficient to establish an excuse for Keele's stopping without signalling his intention; (c) it was error to refuse instructions tendered by Lovely on sudden emergency and the duty applicable to stopping a vehicle on a highway.

The basic facts disclosed that Keele was driving west on a two-lane highway approaching a bridge over the Eel River. At this time there were three cars stopped on the other side of the bridge (cars no. 1, no. 2 and no. 3).

Car no. 1 was originally also headed west. It then went west a short distance, made a "U" turn and came back to the other two, where it stopped while the drivers conversed. As Keele approached the bridge, this car then accelerated rapidly, fishtailed, straightened out and crossed the bridge. Keele testified that he thought this car would hit him head on from the angle at which he observed it.

Car no. 2, which Keele did not recall at trial, was stopped on the south side of the road headed east toward Keele. When car no. 1 pulled out, it followed but at a moderate pace. Its driver testified at the trial that at the moment of the Lovely-Keele collision, his car was in the eastbound lane right beside Keele's truck.

Car no. 3 was headed west and stopped on the berm west of the bridge. When the other two cars started, this car also started up and pulled out into the westbound lane of traffic. When this occurred, Keele applied his brakes and stopped.

He was then struck from behind by the automobile in which Lovely was riding. Although the evidence was conflicting, Keele testified that when car no. 3 drove onto the roadway and he determined to stop, the car was not more than two car-lengths away.

We recognize the essential redundancy contained in proper instructions defining negligence and presenting the sudden emergency doctrine. Indeed, giving a sudden emergency instruction has been held harmless error even though the instruction was not warranted by the evidence since the duty imposed under the instruction merely presents the standard for determining negligence. *See, e.g. Baker* v. *Mason* (1968), 253 Ind. 348, 242 N.E.2d 513; *Spears* v. *Aylor* (1974), 162 Ind. App. 340, 319 N.E.2d 639.

Nevertheless, where supported by the evidence, the propriety of giving such instructions is well established in Indiana. *Zoludow* v. *Keeshin Motor Express* (1941), 109 Ind. App. 575, 34 N.E.2d 980; *Bundy* v. *Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 791.

Juries are instructed in order that the jurors may have a clear, fairly stated understanding of the law that applies to the case before them. The instruction on sudden emergency may serve this purpose. By drawing specific attention to the emergency, if it is found to exist, the instruction may amplify the definition of negligence in terms of facts the jury may find. At the same time, it cautions the jury that one cannot seek shelter in circumstances he has himself negligently created.

Lovely correctly points out the legal principles involved in application of the doctrine: The actor must not have created or brought about the emergency through his own negligence. *Redd* v. *Indianapolis Rys.* (1951), 121 Ind. App. 472, 97 N.E.2d 501. The danger must appear to the actor to be so imminent as to leave no

time for deliberation. *Paxton* v. *Ferrell* (1969), 144 Ind. App. 124, 244 N.E.2d 439. This, of course, includes the necessity of the actor perceiving the emergency. *Dimmick* v. *Follis* (1953), 123 Ind. App. 701, 111 N.E.2d 486. Finally, the apprehension of an emergency must, itself, have been reasonable. *Hedgecock* v. *Orlosky* (1942), 220 Ind. 390, 44 N.E.2d 93. When these prerequisites exist, then the actor's conduct is not negligent, if a reasonable man confronted with the same circumstances might have reacted in the same fashion, even though another course of conduct would have been more judicious, or safer, or might even have avoided the injury. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N.E.2d 629. Thus, the doctrine of sudden emergency simply recognizes that the law of negligence does not require the same accuracy of judgment of one who has innocently been deprived of time to deliberate his actions as it imposes on one who has the opportunity for deliberation.

The determination of what conduct constitutes reasonable care is normally a question for the jury. Of course, it remains so when posed in the context of an emergency. *Gamble* v. *Lewis, supra.*

Thus, while the doctrine of sudden emergency may be helpful to the trier of fact who must determine whether negligence (or contributory negligence) has been established by a preponderance of the evidence, it might be questioned whether the distinction it poses can create an adequate predicate for error on appeal.

The instruction was properly given if it was pertinent to the facts and circumstances shown in evidence. *Echterling* v. *Jack Gray Transport* (1971), 148 Ind. App. 415, 267 N.E.2d 198. Admittedly, Keele did not contribute to the situation confronting him and did perceive it as an emergency. Although the evidence was conflicting, his testimony was sufficient to enable the jury to decide that his

apprehension of peril was reasonable. The instruction was therefore properly given.

Similarly, we cannot say, upon a consideration of the evidence favoring Keele, that the only conclusion to be drawn by a reasonable man was that Keele was negligent. Accordingly, the verdict was not contrary to law on that account.

Lovely points out that the burden of establishing an excuse for violation of a duty imposed by statute rests with the one asserting the excuse. *See, Larkins* v. *Kohlmeyer* (1951), 229 Ind. 391, 98 N.E.2d 896. She then points to the instruction given to the jury based on IC 1971, 9-4-1-78, 79 and 80 (Burns Code Ed.) which recited in part that "no person shall slow down or stop a vehicle . . . unless and until such movement can be made with reasonable safety, and then only after . . . an appropriate stop . . . signal." The instruction advised the jury that if they found Keele violated these statutes without excuse or justification, his conduct in so doing would constitute negligence. Another instruction advised the jury that Keele had the burden of establishing excuse or justification.

However, there was evidence that Keele's brake lights were working and the jury could have found that he did signal his stop. Assuming the portion of the statute prohibiting stopping "unless and until such movement can be made with reasonable safety" imposes a sufficiently specific duty for its violation to constitute negligence, the jury could have found that compliance was excused by virtue of the emergency. *Larkins* v. *Kohlmeyer, supra.*

Lovely next complains of the court's refusal to give her tendered instruction number 7. This instruction, in part, told the jury that, notwithstanding any emergency, if Keele could, nevertheless, in the exercise of reasonable care, have avoided stopping in the highway, then "such emergency would not constitute a valid defense."

This instruction was properly refused. It was confusing in its statement that "emergency" was a "defense". More significantly, it would have improperly limited the jury's consideration of reasonable care in the face of an emergency by specifying that if Keele could have avoided stopping, no other conduct would suffice. Upon the evidence favoring Keele, we cannot say that no reasonable man in Keele's position would have applied his brakes. As the court stated in *Gamble* v. *Lewis, supra,* that a more judicious or safer alternative was also available would not preclude a finding of reasonable care.

Finally, objection is made to the court's refusal to give a tendered instruction based upon IC 1971, 9-4-1-112. The instruction quoted the provision of that statute and directed that its violation would constitute negligence in this case if the violation was without excuse or justification. The statute provides:

> "Upon a highway outside of a business or residence district, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in any event, a sufficient unobstructed width of the roadway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred (200) feet in each direction upon such highway."

Admittedly Keele stopped upon the bridge, but Lovely contends that the evidence favoring her theory of the case could have supported a determination that Keele could have pulled off the road before he reached the bridge. Thus, she claims she was entitled to the instruction.

We think the statute was inapplicable to the evidence in this case, and the instruction was properly refused. Although

there was conflicting evidence regarding the circumstances at the time Keele stopped, one fact is undisputed. His only purpose in stopping was to avoid the traffic ahead of him. He did not intend an even temporary cessation of operation except as it appeared to be required for safety.

In *Northern Ind. Transit* v. *Burk* (1950), 228 Ind. 162, 169, 89 N.E.2d 905, 908, our Supreme Court stated:

> "Traffic statutes should receive a reasonable construction consistent with the purpose of their enactment and the practical difficulties that arise in their application to particular cases."

Under our Uniform Act Regulating Traffic on Highways (IC 1971, 9-4-1-1 *et seq.*) there are instances where a driver must stop his vehicle *as a part of* his use of the highway for the purpose of travel. There are other instances when such stopping is either inconsistent with such purpose or at least represents a departure therefrom. The statute urged by Lovely is intended to apply to these latter instances. It was not, however, intended to apply to any and every stop made by the driver of a motor vehicle.

Thus, in *Woodrow* v. *Woodrow* (1961), 131 Ind. App. 523, 172 N.E.2d 883, the statute was held to be properly invoked against a driver who stopped in the travelled portion of the road in order to hunt a pheasant.

A federal court has further held the statute was violated where a driver drove into smoke which was blowing across the highway from a nearby brush fire, and then stopped and remained on the travelled portion of the road when the smoke became dense. *Feguer* v. *Brown* (N.D. Ind. 1955), 130 F. Supp. 637.

The use of the word "stop" in the statute is not mere surplusage. However, when the entire traffic act is considered,

its use was clearly not intended to make the statute apply to all stops. Rather the term was used to apply to "stops" which were not a part of, or were inconsistent with, the purpose of continuing travel upon the highway.

This the legislature attempted to accomplish in IC 1971, 9-4-1-112 without creating a possible semantic discrepancy over whether the stopping was technically a "parking."

As the Supreme Court stated in *Northern Indiana Transit* the reasonableness of the purpose, the place and the length of stopping may determine whether the cessation of motion is a mere stop or a parking. Where, however, it is undisputed that the stop was only momentary for the purpose of avoiding a hazard to further progress, IC 1971, 9-4-1-112 is not applicable as a basis for negligence *per se*.[1]

The judgment is affirmed.

Station, P.J., and Hoffman, J., concur.

NOTE.—Reported at 333 N.E.2d 866.

1. Whether such a stop might even then factually constitute a lack of reasonable care is another question and beyond the issue before us on appeal.