Thomas J. SULLIVAN, Appellant (Plaintiff Below),

v.

FAIRMONT HOMES, INC., and Lynn L. Walker, Appellees (Defendants Below).

No. 29A02–8902–CV–00049.[1]

Court of Appeals of Indiana, First District.

Sept. 20, 1989.

1. This case was diverted from the Second District by direction of the Chief Judge.

Charles T. Jennings, Mark R. Smith, Jennings & Maas, Indianapolis, Ind., for appellant.

Terrence L. Brookie, Todd J. Kaiser, Locke Reynolds Boyd & Weisell, Indianapolis, Ind., for appellees.

ROBERTSON, Judge.

This appeal arises from a rear-end collision case in which the jury returned a verdict in favor of the defendants-appellees, Fairmont Homes, Inc. and Linn L. Walker. The plaintiff-appellant Thomas J. Sullivan raises multiple issues for our review, which we have recharacterized as the following:

1) whether the trial court committed reversible error by permitting Fairmont Homes's expert witness to read to the jury portions of a computer-generated interpretive report which the witness did not prepare;

2) whether the trial court committed reversible error when it ruled testimony from Fairmont Homes's in-house counsel privileged;

3) whether Sullivan's inability to introduce portions of deposition testimony during rebuttal was due to an abuse of discretion by the trial court;

4) whether the trial court abused its discretion when it permitted Fairmont Homes to utilize deposition testimony elicited by Edwards after Edwards settled and was no longer a party to the lawsuit;

5) whether the trial court properly disallowed impeachment of Edwards by use of a prior child molesting conviction;

6) whether the trial court committed reversible error by reading Fairmont Homes's tendered instruction on the sudden emergency doctrine;

7) whether the trial court committed reversible error in refusing Sullivan's tendered instruction on concurrent negligence;

8) whether the trial court committed reversible error in refusing Sullivan's tendered instruction on proof of damages;

9) whether Sullivan was denied a fair trial by a combination of errors or irregularities;

10) whether the judgment is contrary to law;

11) whether Sullivan was entitled to a judgment on the evidence on the issue of liability; and

12) whether the trial court erred in denying Sullivan a new trial.

We affirm.

On January 12, 1984, between 7:00 and 7:30 a.m., Walker, an employee of Fairmont Homes, was driving north in the east lane of U.S. 31 near Kokomo, Indiana in a semi-tractor/trailer with a load of five to six tons. It was rush hour. As Walker approached the stoplight at the intersection of U.S. 31 and Savoy Street, he observed the Curtis vehicle in which Sullivan was a passenger already stopped in the same lane. He also observed the Edwards vehicle in the east lane running alone toward the intersection. Walker was about 200–300 feet behind Edwards and moving about 30 to 35 m.p.h. at this time. Edwards and Walker applied their brakes at the same time, as the light changed to red. Edwards hit a patch of frost and the rear-end of his vehicle began to fishtail within the lane, but eventually he came to a stop four to five feet behind the Curtis vehicle. Edwards estimated that he traveled 100–200 feet after he first applied his brakes. Walker had slowed the truck down and was somewhat closer to Edwards than 200–300 feet when he saw Edwards's vehicle sliding.

Walker testified that it was only a matter of seconds between the time he saw Edwards come to a stop, the semi began to slide, and he collided with Edwards. Walker had applied his brakes and slowed the semi down on dry pavement but when he hit the frost, his wheels "turned loose" and the brakes apparently locked. He did not sound his horn because he was too busy trying to get the truck stopped. Edwards had only enough time to wipe his brow with relief, and look into the mirror. He saw the semi's headlights disappear and jerked his steering wheel to the left, in an attempt to avoid an impact with the Curtis vehicle. He estimated he had only about a twentieth of a second to react. Edwards reported Walker was not moving very fast at the time of collision. Walker testified he was going about 10 m.p.h. when he collided with Edwards and propelled Edwards's ve-

hicle forward into the Curtis automobile, injuring Sullivan.

## I.

Sullivan argues the trial court committed reversible error when it permitted the defendants' expert witness, Dr. Bartleson, to read to the jury a computer-generated, interpretive report of a Minnesota Multiphasic Personality Inventory test (MMPI) given Sullivan after the collision, and when it admitted a letter authored by Dr. Bartleson which quoted the MMPI report. The report itself, which Sullivan contends constitutes inadmissible hearsay, was not otherwise admitted as substantive evidence.

Dr. Bartleson testified that the MMPI has been widely used for about fifty years as a screening device for emotional disorders. He could not say why he ordered the test for Sullivan. Although Dr. Bartleson indicated he thought the report must have influenced him in some way, he could not say he relied upon it in reaching a diagnostic conclusion. Dr. Bartleson does not consider himself to be an expert in the interpretation of the MMPI. The record does not show who programmed the computer, how the information provided by Sullivan was recorded and fed into the computer, or the scientific acceptability or reliability of the computerized result.

Again, Sullivan's complaint is not with Dr. Bartleson's use of the report in formulating his own expert opinion but with Dr. Bartleson's reading of another expert's interpretation of test results verbatim to the jury without appropriate foundational testimony or subjecting the author of the report to cross-examination. Generally, the observations or opinions of someone not present at trial are hearsay and cannot be introduced to confirm or bolster an expert witness's testimony where the observations or opinions are offered to show the truth of the matter asserted therein and where the expert witness arrived at his opinion independent of them. *Indiana & Michigan Electric Co. v. Hurm* (1981), Ind.App., 422 N.E.2d 371, 379; *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148, 155. *See also, In re the*

*Guardianship of Carrico v. Bennett* (1974), 162 Ind.App. 330, 319 N.E.2d 625. An expert in one field cannot be a conduit for the opinions of an expert in another field. *Duncan v. George Moser Leather Co.* (1980), Ind.App., 408 N.E.2d 1332, 1343. *Cf., also, Capital Improvement Bd. of Managers of Marion County v. Public Service Comm'n.* (1978), 176 Ind.App. 240, 375 N.E.2d 616; *Trinity Universal Ins. Co. v. Town of Speedway* (1965), 137 Ind. App. 510, 210 N.E.2d 95.

■ Fairmont contends the report is not hearsay because the testimony was not offered to prove the truth of the various matters asserted in the report but to show one of the reports which Dr. Bartleson relied upon to form an opinion as to the cause of Sullivan's headaches. We find this argument disingenuous. Dr. Bartleson testified that while the report must have influenced him in some way, he did not rely upon it in diagnosing Sullivan's medical condition. Had Dr. Bartleson in fact relied upon the report, he necessarily would have taken the substance of the report to be true. Yet, the record does not show the witness knew anything more about the results of the test than he had read in the report to the jury. The examination and resulting profile were not before the court or offered to the witness. The reliability of the test's interpretation, dependent upon the method and qualifications of the tester as well as the expertise of the interpreter, could not be challenged through cross-examination, because Dr. Bartleson played no role in the preparation of the report. Dr. Bartleson was not testifying from his own personal knowledge of the exhibit. Hence, the court erred in admitting this hearsay evidence.

■ We cannot agree with Sullivan, however, that the admission of this evidence constitutes reversible error. The jury's verdict in favor of Fairmont Homes amounts to a determination of nonliability. Evidence directed toward the extent of Sullivan's injuries could have played no role in the jury's determination. *Accord, Campbell v. City of Mishawaka* (1981), Ind.App., 422 N.E.2d 334, *trans. denied.* None-

theless, Sullivan maintains that the psychological profile read by Dr. Bartleson casts doubt on all of his testimony and necessarily affected the jury when it weighed the evidence and assessed witness credibility. Sullivan assumes that conflicts or inconsistencies in the evidence existed, requiring the jury to reconcile the testimony. We find, however, no contradiction. The jury could have accepted as true the testimony of each of the witnesses and still found Walker did not act negligently. None of the witnesses observed snow or ice on the road prior to the collision. All reported it to be a clear, crisp morning and the road conditions dry. Both Walker and Edwards, the driver of the vehicle directly behind the Curtis vehicle, testified that the road appeared dry yet each slid as he slowed to stop. Edwards crossed the patch without sliding into the Curtis vehicle. Walker's brakes locked as he crossed the patch. Neither of the occupants in the Curtis vehicle saw the accident happen.

## II.

■ Sullivan argues next that the trial court erred in prohibiting testimony from Fairmont Homes's in-house corporate counsel, Kenneth Brinker. Sullivan indicated before making an offer to prove that he intended to ask Brinker whether it was his opinion, based upon the facts that had been reported to him by employee Walker, that Walker was negligent in the operation of his truck at the time of the collision. The trial judge indicated he would sustain Fairmont Homes's objection to that question based upon attorney-client privilege. However, during the offer to prove, Sullivan instead asked Brinker what facts Walker related to him concerning the accident, not his legal opinion. The trial court sustained Fairmont Homes's objection. Sullivan did not then indicate what he expected Brinker's response to be.

Although we are inclined to agree with Fairmont Homes that Walker's communications with Brinker are privileged, *see, Upjohn Co. v. United States* (1981), 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 we need not render an opinion on that question be-

cause it is apparent that an application of the attorney-client privilege to communications such as those involved here puts Sullivan in no worse position than if the communications had never taken place.

Walker testified at length about his involvement in the collision leading to Sullivan's injuries. Sullivan had the opportunity to discover both before and during the trial the relevant facts within Walker's knowledge. Sullivan does not argue and has not demonstrated that Walker is withholding from him relevant information concerning the accident. Presumably, then, the facts to be garnered second-hand from Fairmont Homes's attorney were those disclosed at trial. The proponent of evidence has the burden to show harm by an error in the exclusion of testimony. *Dean v. Insurance Co. of North America* (1985), Ind. App., 453 N.E.2d 1187, 1191. Upon this record, we cannot conclude that reversible error occurred. *See, Indianapolis Union Railway v. Walker* (1974), 162 Ind.App. 166, 318 N.E.2d 578, *trans. denied.*

### III.

Sullivan also contends the trial court abused its discretion by precluding him from introducing portions of the deposition testimony of Dr. Cantin to rebut to the testimony of Dr. Bartleson on the results of the post-collision MMPI. Sullivan had hoped to show by use of Dr. Cantin's testimony relating to an earlier MMPI that certain levels of the post-collision profile were elevated as a consequence of the accident and could be explained by Sullivan's physical condition.

Ind. Rules of Procedure, Trial Rule 32(A)(4) provides:

If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in context to be considered with the part introduced, and *any party may introduce any other parts.* (Emphasis added.)

However, the introduction of other parts of a deposition is subject to the proviso of admissibility under the rules of evidence contained in section (A) of T.R. 32. *See,*

*Wynder v. Lonergan* (1972), 153 Ind.App. 92, 286 N.E.2d 413, *trans. denied; Zepeda v. Cress* (1980), Ind.App., 406 N.E.2d 1252.

■ The record shows the trial court permitted Sullivan to read portions of Dr. Cantin's deposition into evidence, but cautioned Sullivan that by doing so he would open the door for other admissible portions of Cantin's deposition from Fairmont Homes. Although some of the deposition testimony identified by Sullivan as irrelevant and unduly prejudicial is irrelevant, other portions of the deposition suggest that aspects of Sullivan's family life, such as the death of a child during the year after the collision, were creating stress for Sullivan and might have had a causal effect upon his physical and emotional condition. The admissibility of this evidence would be a matter within the discretion of the trial court. *Gates v. Rosenogle* (1983), Ind. App., 452 N.E.2d 467, 472.

Sullivan chose not to offer the deposition testimony; hence, it was a proper application of T.R. 32(A)(4) and not an error in the trial court's ruling which hampered Sullivan in his effort to introduce Dr. Cantin's testimony.

■ Again, the deposition testimony of Dr. Cantin related solely to Sullivan's injuries. Since the jury found against Sullivan on the issue of liability, any potential error in the trial court's ruling with respect to the deposition testimony is harmless. *Yuhasz v. Mohr* (1974), 159 Ind.App. 478, 307 N.E.2d 516, 518; *Whisman v. Fawcett* (1984), Ind., 470 N.E.2d 73.

### IV.

Sullivan alleges the trial court abused its discretion when it permitted Fairmont Homes to use deposition testimony and exhibits developed by Edwards while he was a party to the lawsuit. Sullivan does not contest the showing of unavailability offered by Fairmont Homes but argues instead that because Edwards was no longer a party to the lawsuit at the time the deposition evidence was to be used and Fairmont Homes had the opportunity to inquire, the cross-examination testimony of

Dr. Bartleson and Dr. Steiman cannot be used by Fairmont Homes as substantive evidence.

> Again, T.R. 32 provides in pertinent part: (A) ... any part ... of a deposition, so far as admissible under the rules of evidence ... may be used against any party who was present or represented at the taking of the deposition ...
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose ...
>
> (C) A party does not make a person his own witness for any purpose by taking his deposition. The introduction in evidence of ... any part thereof for any purpose ... makes the deponent the witness of the party introducing the deposition, ...

■ It bears repeating that under T.R. 32, *any* party, not only the party who took the deposition, may use *any* part or all of a deposition of a witness, for any purpose, if the party demonstrates the existence of one of the conditions in T.R. 32(A)(3), and the party against whom the deposition is used was present or represented at the taking of the deposition. The first sentence of T.R. 32(C) makes clear that by taking a deposition before trial, a party does not thereby impose restrictions upon himself with respect to the deponent at trial. *Cf., Wynder, supra,* 4A J. Moore, J. Lucas, & D. Epstein, Moore's Federal Practice § 32.05, 32.10 (2d ed. 1988). T.R. 32 therefore does not compel the exclusion of the deposition testimony merely because it was elicited by another party who ultimately settled; neither does it constrain the party taking the deposition to that portion of the testimony developed by the party, as Sullivan maintains.

In any event, error in the admission of this evidence would be harmless since the evidence related solely to the issue of damages. *Yuhasz v. Mohr, supra.*

## V.

■ The trial court refused to permit Sullivan to use a child molesting conviction to impeach the credibility of witness Edwards. Sullivan argues that the crime of child molesting is in essence the infamous crime of rape. He maintains that Edwards's credibility with respect to the road's condition was critical to the jury's determination of liability; therefore, the refusal to permit impeachment with the child molesting conviction constitutes prejudicial, reversible error. Sullivan does not argue that Edwards's child molesting conviction falls within the rubric of *Ashton's* [2] other prong, namely, impeachment by showing conviction of a crime involving dishonesty or false statement.

IND.CODE 1971, 34–1–14–14 permits impeachment by showing a prior conviction of a crime which at common law would have rendered a witness incompetent to testify. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, 216–217. The list of infamous crimes which would have rendered a witness incompetent is exclusive: treason, murder, rape, arson, burglary, robbery, kidnapping (manstealing), forgery and willful and corrupt perjury. *See, id.; Glenn v. Clore* (1873), 42 Ind. 60, 62 (not all felonies render perpetrator infamous; revised statutes of 1843, § 79, p. 999 declared crimes to be deemed infamous at common law). The Indiana Supreme Court appears to be disinclined to judicially extend the set to incorporate proof of crimes not specifically enumerated and lesser included offenses without direction from the legislature. *See, Fletcher v. State* (1976), 264 Ind. 132, 340 N.E.2d 771, 774, n. 1.

Apparently, the State charged Edwards with two offenses. He pled guilty and a judgment of conviction was entered to the crime of child molesting. The crime of child molesting is not one of the crimes deemed to be infamous. Furthermore, the showing made upon the offer to prove does not permit us to probe into the factual basis for the child molesting conviction to ascertain the common law equivalent. We will not presume Edwards pled guilty to child molesting by sexual intercourse. We have not been equipped with an adequate record upon which to fashion such an ex-

2. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.

tension, and neither was the trial court. Accordingly, we can discern no error in precluding the use of the child molesting conviction for impeachment purposes.

## VI.

Sullivan challenges the trial court's reading of Fairmont Homes's final instruction on the sudden emergency doctrine. Sullivan objected at trial on the basis that the evidence did not support the giving of such an instruction. Sullivan renews this objection in his brief arguing first, that the evidence does not warrant a sudden emergency instruction because under Indiana law the "sudden emergency" must be attributable to the conduct of another, not natural causes; second, that the evidence shows Walker had time to deliberate and was aware of the road's condition before his truck began to slide; and, third, there was no evidence that the danger was not created by Walker's own negligence; hence, there could be no sudden emergency.

In Indiana, each party to an action is entitled to have the jury instructed upon his particular theory of complaint or defense. *McCraney v. Kuechenberg* (1969), 144 Ind.App. 629, 248 N.E.2d 171. An instruction on the theory of sudden emergency would be proper if there is any evidence or inference therefrom in the record supporting it. *Mullins v. Bunch* (1981), Ind., 425 N.E.2d 164, 165; *Kiger v. Arco Auto Carriers, Inc.* (1969), 144 Ind.App. 239, 245 N.E.2d 677. The court has a duty to give such an instruction if it is supported by the evidence and goes to Fairmont Homes's theory of the case. *Kiger, id.*

■ The doctrine of sudden emergency recognizes that a reasonable person innocently deprived of time to consider his actions does not always exercise the same accuracy of judgment as one who has had the opportunity for reflection. *Lovely v. Keele* (1975), 166 Ind.App. 106, 110, 333 N.E.2d 866. The cases outlining the doctrine routinely recite three factual prerequisites to an instruction on the rule. The actor must not have created or brought about the emergency through his own neg-

ligence. The danger or peril confronting the actor must appear to be so imminent as to leave no time for deliberation. And finally, the actor's apprehension of the peril must itself be reasonable. *Hedgecock v. Orlosky* (1942), 220 Ind. 390, 397, 44 N.E.2d 93; *Lovely, supra.* Cases of more recent vintage have characterized the latter factor as a requirement that the actor's conduct under the circumstances be such as the law requires of an ordinarily prudent person under like or similar circumstances. *Cf., Taylor v. Fitzpatrick* (1955), 235 Ind. 238, 132 N.E.2d 919; *Bundy v. Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind.App. 99, 301 N.E.2d 791, *trans. denied; Stein v. Yung* (1985), Ind.App., 475 N.E.2d 52, *trans. denied.* If the court determines that these conditions have been met, the jury may be instructed that if it finds a reasonable person confronted with the same circumstances might have reacted in the same fashion, even though another course of conduct might have been more judicious, or safer, or might even have avoided the accident, it may still find the actor's conduct not to be negligent. *Lovely, supra.*

■ To the best of our knowledge, no Indiana decision directly addresses Sullivan's contention that the sudden emergency doctrine does not apply to a natural condition such as frost on the road's surface as is involved here. Although there are recorded decisions involving sudden emergencies purportedly arising because of driving conditions, *see, e.g., Stein v. Yung, supra* and *Michigan City v. Rudolph* (1938), 104 Ind.App. 643, 12 N.E.2d 970, these cases were not resolved against the actor based upon the rationale that a sudden emergency may only arise from the negligence or conduct of another. Sullivan points to dicta in *Redd v. Indianapolis Railways, Inc.* (1951), 121 Ind.App. 472, 474, 97 N.E.2d 501, *trans. denied,* derived from language in *Hedgecock v. Orlosky, supra,* that the peril or alarm confronting a plaintiff seeking to absolve himself from contributory negligence must have been caused by the negligence of the defendant or third persons. Again, neither of these

cases turns upon this element. *Redd* holds that the *actor's* freedom from negligence is an essential element of the doctrine, *see,* 121 Ind.App. at 474–475, 97 N.E.2d 501 while *Hedgecock* concerns an application of the requirement that the peril be imminent. 220 Ind. 390, 397, 44 N.E.2d 93.

*Hedgecock* draws upon the common law of other jurisdictions in setting forth the constituents of the sudden peril doctrine. Our survey of the common law in other states reveals no pervasive, per se rule as that urged by Sullivan. *See generally,* Annot., 80 A.L.R.2d 45, 60, cases cited therein and in Later Case Service. For example, the Restatement (Second) of Torts § 296(1) (1977) treats a sudden emergency as a factor to be considered in determining whether conduct is reasonable. Comment a to that section states that subsection (1) applies where the sudden emergency is created in any way *other than the actor's own conduct,* as where the emergency is created by the unexpected operation of a natural force *or* by the innocent or wrongful act of a third person.

The only case cited by Sullivan which invokes a per se rule with respect to bad road conditions is *Oechsle v. Hart* (1967), 12 Ohio St.2d 29, 231 N.E.2d 306. In that case, the Ohio court acknowledged that under the usual test of foreseeability, holding a defendant responsible for the act of skidding on a random patch of ice on an otherwise clear highway was a harsh result, but held nonetheless that an operator of a motor vehicle is responsible for keeping his vehicle under control regardless of the road conditions. Apparently, the Ohio court made a policy determination that bad road conditions alone should not excuse a driver from the mandatory requirements of a safety statute.

We are not prepared to take the same step without a sound rationale for doing so. To unalterably impose responsibility without regard for excuse or justification is inconsistent with basic principles of negligence law. In Indiana, loss is allocated or equalized by application of the standard of reasonable care. For this reason, our courts have adopted the rule that proof of the violation of a safety statute creates a rebuttable presumption of negligence. *See, Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101, 104; *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613, 621. The presumption may always be rebutted by showing that the actor did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desires to comply with the law. *Davison, supra,* 251 Ind. at 105, 242 N.E.2d 101.

In sum, we find nothing in Indiana law requiring that a sudden peril must be caused by another person rather than natural forces. Other jurisdictions do not appear to be imposing such a rule. Inasmuch as Sullivan has not supplied us with a rationale for treating road conditions differently from other circumstances confronting the reasonable man, and, at this time, we know of none, we must conclude that an instruction may properly be given when the evidence shows a sudden danger created by inclement weather conditions or other natural circumstances, provided the other essential prerequisites of the doctrine are present.

■ We view Sullivan's other two contentions concerning the state of the evidence supporting the instruction to be interrelated. It is undisputed that Walker saw Edwards's vehicle fishtailing in front of him as he slowed for the light. Sullivan maintains that Walker therefore knew of the road's slippery condition, vitiating, as a matter of law, Fairmont Homes's claim that there was a sudden emergency. He contends the evidence establishes that Walker had time to deliberate; if he did not, Sullivan argues, it was because the situation was of Walker's own negligent making.

We are not prepared to say as a matter of law that no emergency existed, that Walker had time for deliberation, or that the peril which he faced was created by his own negligence. There is evidence in the record showing that Edwards's vehicle, the second in line at the light, traveled a total distance of 100–200 feet after Edwards first began to brake. The record does not

disclose where in relation to the other vehicles Edwards was when he began to slide or how long he slid. It does show he had less than a second to react once he got his vehicle stopped and discerned that the semi was going to run into him. Viewing the evidence favorably to the verdict, Walker was less than 200 feet from Edwards when Walker saw Edwards slide. He therefore had three to four seconds before he himself encountered the patch of frost. Obviously, whether this was sufficient time under the circumstances to reason through alternatives or bring the semi to a complete stop is a point upon which reasonable minds might differ. We are unable to say categorically that this is sufficient time within which to take deliberate action. *Compare, Michigan City v. Rudolph* (1938), 104 Ind.App. 643, 12 N.E.2d 970 relied upon by Sullivan in which this court held there was no emergency: The actor knew one-half block away that sand had accumulated on the road's surface, and the uncontroverted evidence established she had time to stop her car before proceeding through the sand. *Cf., also, Kiger v. Arco Auto Carriers, Inc., supra.* (Driver who saw cars at intersection from distance of 480′ still may have encountered emergency when both cars proceeded to turn out in front of him).

 To reiterate, the doctrine of sudden peril deals with the potentially negligent conduct of the actor *after* the emergency arose. Perhaps, Walker caused his brakes to "turn loose" by applying his brakes too effectively. If he had gotten off the brakes, applied them lightly or repeatedly, moved somewhere else, or taken other measures, he might have, in the exercise of due care, avoided the collision. The doctrine of sudden peril permits the jury to consider the absence of time for reflection in determining whether a reasonably prudent person in Walker's position would have acted similarly when confronted with the same emergency.

 Yet, if Walker's own negligent acts or omissions created the dangerous situation, he cannot rely upon the emergency to explain the resulting harm. Consequently, the critical question for the court, in determining whether to instruct the jury on the emergency doctrine, and, ultimately, for the jury's determination, is whether, under all the circumstances shown to exist, Walker's handling of his semi-truck constituted negligence *before* the accident. We find ample evidence from which to reasonably infer that the emergency confronting Walker was a product of the circumstances and not attributable to Walker's own negligence.

The uncontradicted evidence from all the witnesses who testified on the liability issue established that the road conditions were good that morning. It was a cold, crisp day; the roads were free of ice and snow and appeared completely dry. Walker, who had made the same trip before, was traveling from Louisville to Nappanee. He had been on the road several hours at that point and had not experienced any trouble stopping at any other point along the route. None of the drivers encountered any difficulty stopping or slowing their vehicles before the collision. Edwards said the road's surface at the intersection looked dry but was in fact slick. Neither he nor Walker saw the frost.

The northbound and southbound lanes on U.S. 31 at Savoy are divided by a median. There are two through lanes and a left and right turn lane. At the time Walker arrived upon the intersection, there were as many as ten cars in the west lane and cars in both the left and right turn lanes. The vehicle in which Sullivan was riding was already stopped at the intersection.

The evidence is conflicting with respect to the posted speed limit in this area. Walker thought it was a 35 m.p.h. zone, Edwards, 40 m.p.h. In any event, Walker testified that he was traveling 30–35 m.p.h. when the light changed to red. Since Walker was traveling within the posted speed limit and the road up until that time had been dry, it is reasonable to conclude Walker was proceeding in accord with the conditions as they appeared. Similarly, given the absence of ice and snow up to that point, the outward appearance of the road's surface, the lack of any earlier difficulties, and the apparent ability of others

to stop without incident at the intersection, the presence of frost was not necessarily reasonably foreseeable either.

The evidence raises other questions of reasonableness. Walker was traveling at a distance of 200–300 feet behind the car in front of him. He did not begin to brake until the light changed to red. Whether he should have maintained a safer distance, been more watchful or exercised earlier control of the vehicle in light of the size and weight of the load are questions that can be resolved favorably toward Walker, as the jury did. Accordingly, we cannot agree with Sullivan that the evidence establishes as a matter of law that Walker was negligent before he became aware of the frost, foreclosing an instruction on the sudden emergency rule. In light of our determination that the evidence warranted the instruction, we need not address the prejudice component of reversible error, argued extensively by Sullivan.

## VII.

■ Sullivan's seventh issue on appeal concerns the trial court's refusal to give Sullivan's tendered instruction on concurrent negligence. Sullivan urged the instruction at trial based upon the fear that Fairmont Homes would point to Edwards, a nonparty, as the negligent party, even though the case was tried under ordinary negligence law. The trial court, in ruling upon the requested instruction, indicated that the evidence would not justify the instruction, that Fairmont Homes had not yet attempted to avoid liability by pointing to Edwards and if it did so during closing arguments, it was incumbent upon Sullivan to bring the matter to the court's attention. Sullivan now argues that the jury could have inferred due to the settlement with Edwards that Edwards was concurrently negligent.

■ On appeal, the appellant bears the burden of showing reversible error. All reasonable presumptions are indulged in favor of the trial court's rulings and judgment. The reviewing court will not presume anything in favor of the claim of error. *Raymundo v. Hammond Clinic*

*Association* (1983), Ind., 449 N.E.2d 276, 280. For the refusal of a tendered instruction to constitute reversible error, it must be shown that the instruction correctly states the law, the instruction is supported by the evidence, the substance of the instruction is not covered by others which were given and that there is a reasonable probability that substantial rights of the complaining party have been adversely affected. *Transport Ins. Co. v. Terrell Trucking* (1987), Ind.App., 509 N.E.2d 220, 224.

Sullivan does not direct us to evidence in the record supporting the instruction but he contends it exists. He has not cited either authority for his assertion that such an instruction was necessary to explain the dismissal of the cause as to Edwards or pages in the record where the theory of Edwards concurring negligence was interjected. We are unable to discern how he was adversely affected by a refusal of the instruction in light of the evidence presented.

## VIII.

■ Sullivan alleges error in the trial court's refusal to give his instruction on the assessment of damages as he tendered it. We cannot reverse the judgment of the trial court for an error in an instruction which clearly did not affect the result. *Grad v. Cross* (1979), 182 Ind.App. 611, 395 N.E.2d 870, 873; *State Exchange Bank of Culver v. Teague* (1986), Ind.App., 495 N.E.2d 262, 270. The jury found against Sullivan on the issue of liability; therefore, any error in the giving of a particular instruction on damages would be harmless. *Chamberlain v. Deaconess Hospital, Inc.* (1975), 163 Ind.App. 324, 324 N.E.2d 172, 178, *trans. denied.*

## IX.

Sullivan next alleges that he was denied a fair trial by certain "irregularities" which occurred during the trial, namely, the trial court's refusal to permit him to present evidence concerning his MMPI while allowing Fairmont Homes to do so; the restriction on his examination of Fairmont

Homes's in-house counsel; the refusal to permit him to impeach with the child molesting conviction; and, the giving of the sudden emergency instruction.

We have already held that Sullivan has not shown reversible error as a consequence of these "irregularities."

## X.

Sullivan contends the verdict is contrary to law because the uncontradicted evidence showed that Walker failed to restrict his speed in a manner which would have enabled him to encounter the frost without losing control of his vehicle.

A finding which is in effect a negative finding against the plaintiff may be set aside as contrary to law only if the evidence is uncontradicted and will support no reasonable inference in favor of the finding. *Brand v. Monumental Life Ins. Co.* (1981), 275 Ind. 308, 417 N.E.2d 297, 298. In determining whether a judgment is contrary to law, we do not weigh the facts nor determine the credibility of witnesses. Where there is a conflict in the evidence, the trier of fact in the court below must resolve that conflict. Where the party having the burden of proof receives a negative judgment from the trier of fact, we will not disturb that judgment if there is any evidence to support it or a reasonable inference to be drawn from any evidence in favor of it. *Id.*

In Indiana, the skidding and sliding of an automobile is not negligence in and of itself. *Echterling v. Jack Gray Transport, Inc.* (1971), 148 Ind.App. 415, 423, 267 N.E.2d 198. It is incumbent upon the party asserting negligence to prove that such skidding and sliding was attended by prior negligence on the part of the defendants. *Id.*

As we indicated earlier in the section of this opinion dealing with the sudden emergency doctrine, the evidence reasonably supports an inference that Walker was driving in accordance with the road conditions as a reasonable person would have perceived them. Likewise, the evidence showed that Walker was not driving at an excessive speed but had slowed his vehicle to such a speed as would permit a safe stop. Whether Walker could have brought the rig to a complete stop before crossing the patch of frost is a question which due to the nature of evidence must be left for the jury's determination. If the jury gave full credit to the evidence and inferences favoring the defendants, as it had a right to do, it would have returned a verdict, warranted by the evidence, for Walker and Fairmont Homes. The judgment therefore is not contrary to law.

In light of this conclusion, it stands to reason that Sullivan's motions for judgment on the evidence and for a new trial were properly denied, as they present the same specification of error. *See, e.g., State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091, 1100 and *Hake v. Allen County* (1947), 117 Ind.App. 683, 75 N.E.2d 674.

Judgment affirmed.

RATLIFF, C.J., and BAKER, J., concur.